JEWEL COMPANIES, INC., a New York Corporation, and Jewel Acquisition Corp., a California Corporation, Plaintiffs,

v.

PAY LESS DRUG STORES NORTHWEST, INC., a Maryland Corporation et al., Defendants.

Kenneth LETT, Plaintiff,

v.

JEWEL COMPANIES, INC., a New York Corporation, and Jewel Acquisition Corp., a California Corporation, Defendants.

Nos. C–80–0023 SW, C–80–0031 SW.

United States District Court,
N. D. California.

April 3, 1981.

Richard W. Canady, Stuart R. Pollak, Robert E. Gooding, Jr., Jay M. Spears, H. Mathew Moore, Howard, Prim, Rice, Nemerovski, Canady & Pollak, A Professional Corp., San Francisco, Cal., Arthur B. Kramer, Robert M. Heller, Alan R. Friedman, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for defendants and counter-claimants.

James P. Kleinberg, David T. Alexander, Michael J. Baker, Petty, Andrews, Tufts & Jackson, San Francisco, Cal., for plaintiff Kenneth Lett.

Stephen V. Bomse, Lawrence W. Keeshan, Daniel E. Titelbaum, Paul W. Sugarman, Steven M. Block, Christina Hall, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiffs.

## MEMORANDUM OF OPINION DENYING JEWEL'S MOTION FOR A PRELIMINARY INJUNCTION

SPENCER WILLIAMS, District Judge.

### INTRODUCTION

This matter came on for a hearing on February 6, 1980. After careful consideration of the lengthy briefs and arguments of counsel, the pleadings, affidavits and other materials in the record, the court entered an order denying the application of Jewel Companies, Inc. for the entry of a preliminary injunction. Due to the length of time this opinion has been under consideration and the obvious need to expedite the matter, this memorandum necessarily represents an abbreviated statement of the reasons for the court's ruling.

### FACTUAL BACKGROUND

The origin of the disputes underlying these two related cases may be traced to November 9, 1979. On that date, Jewel Companies, Inc. and its subsidiary Jewel Acquisition Corporation [collectively referred to herein as "Jewel"] entered into a merger agreement with Pay Less Drug Stores of Oakland, California ["Oakland"]. The agreement contemplated Jewel's acquisition of Oakland in a tax-exempt exchange of stock. The offer was said to be worth in excess of fifteen dollars for each share of Oakland's common stock.

Consummation of the merger agreement, however, was expressly conditioned upon obtaining approval of Oakland's shareholders in the form of an affirmative vote of at least a majority of Oakland's outstanding shares of stock. Toward that end, the November agreement provided that the proposed merger would be the subject of a special meeting of the shareholders. In addition, Oakland agreed to use "its best efforts" to consummate the merger and the Oakland Board of Directors agreed to recommend approval of the merger to the shareholders. At no time, however, did Jewel require Oakland's directors to bind themselves to an exclusive recommendation of the Jewel offer.

After the Jewel proposal was publicly announced, the management of Pay Less Drug Stores Northwest, Inc. ["Northwest"], attempted to acquire Oakland by offering shareholders a competing bid. On December 28, 1979, Northwest stated its intention to make a cash tender offer for any and all shares of Oakland at a tentatively deter-

mined price of $22.50 per share. Thereafter, on January 7, 1980, Northwest sent a letter to Oakland's Board of Directors proposing a merger between Oakland and Northwest and offered a cash price of $22.50 per share.

On January 17, 1980, Jewel informed Northwest and Kenneth Lett, the owner of 6,892 shares of Oakland common stock, that it might begin making open market purchases of Oakland's stock. On January 18, 1980, the Honorable Charles Renfrew granted a temporary restraining order barring Jewel from making such purchases pending the outcome of the instant proceedings.

On February 1, 1980, Northwest entered into an agreement with Oakland under which it increased its tender offer from $22.50 to $24.00. At the same time, the two parties entered into a cash merger agreement at the same price per share. Based on this increased price and Jewel's failure to increase its own offer, Oakland's Board of Directors unanimously recommended to its shareholders that they accept Northwest's tender offer. In making its recommendation, the Oakland Board provided the shareholders with a complete history of the two offers and a discussion of the facts relevant to their decision.

Jewel filed the present action in the state court alleging tortious interference with contractual relations and violations of the state antitrust and unfair competition laws. Defendants removed the case to this court where Jewel amended its complaint to allege violations of federal security laws. This matter came on for a hearing on Jewel's motion for preliminary injunction and on a similar request for equitable relief made by Northwest and Lett.

### LEGAL STANDARD

The Ninth Circuit has announced two related legal standards applicable to the grant or denial of preliminary injunctions. The moving party must show either (1) probable success on the merits, and (2) the possibility of irreparable injury, *Benda v. Grand Lodge of International Ass'n, Etc.,* 584 F.2d 308, 314–15 (9th Cir. 1978) or demonstrate that

(1) serious questions are raised, and (2) the balance of hardships are tipped sharply in his favor. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975).

### DISCUSSION

#### A. Motion of Lett and Northwest

The attorneys for the moving parties put it on the record that there was no need for the court to act on Northwest's and Lett's motion for a preliminary injunction because Jewel never mailed proxy materials to Oakland's shareholders. Therefore, the temporary restraining order issued by Judge Renfrew dissolved pursuant to its own terms.

#### B. Jewel's Motion

This case primarily concerns a claim of tortious interference with contractual relations. The question presented was whether Northwest's proposed merger, which offered Oakland's shareholders the competitive choice between competing offers, constituted a tortious interference with the prior agreement entered into by Oakland's Board of Directors to use "its best efforts" in securing shareholder approval of Jewel's substantially lower offer. At the hearing on this motion, the court answered this question in the negative. Before briefly outlining the reasons for so ruling, it is necessary to address plaintiff's other related claims.

#### 1. Sections 13 and 14 of the 1934 Act

Jewel's various claims brought pursuant to sections 13 and 14 of the Securities Exchange Act of 1934 did not provide a basis for the grant of a preliminary injunction. The various claims depended in large part on the Williams Act amendments to the 1934 Act and its protections for shareholders in tender offer situations. This act reflects a Congressional purpose to require full disclosure by those making tender offers so that shareholders possess adequate information before making an investment expenditure. *See Piper v. Chris-Craft Industries, Inc.,* 430 U.S. 1, 30–31, 97 S.Ct. 926, 943–944, 51 L.Ed.2d 124 (1977).

Assuming arguendo, Northwest's actions taken before January 17, 1980 constituted a tender offer within the meaning of § 14(d), a view which this court does not necessarily endorse due to the independent nature of the open-market purchase scheme, Jewel made no showing of a likelihood of success on the merits nor did it demonstrate a sharp tipping of the hardships in its favor.

■ In tender offer cases, there is a strong public policy in favor of preserving shareholders' freedom to choose between selling stock at a tender offer price and retaining their securities. As such, requests for injunctions against tender offers are frequently denied because the hardships to the moving party do not often outweigh this strong policy of shareholder freedom. This is particularly true in cases, such as the present one, where enjoining the transaction might result in the permanent withdrawal of the offer due to the loss of the offeror's financing. Therefore, the public policy favoring competitive freedom outweighs any purported harm to the moving party for purposes of granting injunctive relief.

### 2. Sections 9 and 10 of the 1934 Act

Jewel alleged that Northwest engaged in deceptive and manipulative conduct in violation of sections 9(a)(2) and 10(b) of the 1934 Act. Jewel argued that Northwest intended to create a series of transactions in Oakland stock to artificially inflate its price and mislead shareholders concerning the value of their stock.

■ The parties did not mention the claims under sections 9 and 10 at oral argument. Upon an examination of the papers it appears that Northwest did not, in fact, artificially inflate its prices. Northwest's tender offer was made in good faith and it was prepared at all times to pay more for Oakland's stock than Jewel. In hindsight, of course, this conclusion was borne out by the conduct of the parties following the court's order.

### 3. Fiduciary Duties Under State Law

■ Jewel alleged that Northwest, if it became the controlling shareholder of Oakland, would have fiduciary duties under California law towards minority shareholders that would be breached by risking potential antitrust violations if the merger deal was completed. Upon the court's examination of the record, it appeared that this claim was factually unfounded because there were no substantial antitrust risks. More importantly, this claim simply was not ripe for adjudication at the injunction stage because any alleged antitrust violation would be purely hypothetical until the merger actually took place.

### 4. Allegations of Antitrust Violations

■ Jewel also alleged that the merger of Northwest and Oakland would constitute a violation of section 7 of the Clayton Act and California Business and Professions Code § 16720. In essence, Jewel alleged that the removal of Oakland would violate federal and state antitrust laws because it would result in the elimination of the major competition in the Northern California market.

The court rejected Jewel's request for injunctive relief on this claim for two reasons. First, Jewel was unable to demonstrate a likelihood of success on the merits. Even if Jewel had sufficient standing to bring this claim, its competitive relationship with Oakland is similar to that of Northwest. A Northwest-Oakland merger would not reduce competition in the relevant market as argued because there were only two locations in California in which Northwest and Oakland had competing stores.

Second, there was no danger of irreparable harm or a strong tipping of the hardships as Jewel has an adequate remedy at law, divestiture, in the event it is able to prove its claims at trial.

### 5. Interference with Contractual Relations

Jewel's primary allegation in this case is that Northwest's conduct and subsequent dealings with Oakland's shareholders consti-

tuted intentional interference with Jewel's contractual relations. This state law claim arises under the court's diversity jurisdiction, and as such, the court must apply the law of California, the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

California law with respect to interference with contractual relations was delineated in the leading case of *Imperial Ice Co. v. Rossier*, 18 Cal.2d 33, 112 P.2d 631 (1941). In *Imperial Ice*, the California Supreme Court held that an action will lie when someone intentionally induces a breach of another's valid contract by resort to means in themselves unlawful. *Id.* at 35, 112 P.2d 631. The court stated, however, that an interference with a contract is justified when the person is seeking to protect an interest of greater social value than that attached to the stability of the contract involved. *Id.*

In determining the justification issue, it is well-recognized in this state that the court must balance the social interest in the protection of the expectancy against the social interest in the preservation of the actor's freedom of action. *Bledsoe v. Watson*, 30 Cal.App.3d 105, 108, 106 Cal.Rptr. 197 (1973). However, it is equally well-established that a person is not justified in inducing a breach of contract simply because he is in competition with one of the parties to the contract and seeks to further his own economic advantage at the expense of the other. *Imperial Ice, supra.*

Applying the foregoing principles to the present case, the court denied Jewel's request for preliminary relief on the claim of interference with contract because the record revealed that there was neither a probability of success on the merits nor a case which raised serious questions. The court reached this conclusion for the reasons discussed below.

The first requirement for a claim of interference with contractual relations is the existence of a valid contract which is in force and effect at the time of the breach that the party has caused. Restatement (Second) of Torts, § 766, Comment f. In the present case it is entirely uncertain whether Jewel's agreement with Oakland's directors constituted a final and fully executed contract at the time of the alleged breach. The Oakland-Jewel proposed merger was expressly conditioned upon the approval of Oakland's shareholders. Such approval is also required by California law. California Corporations Code §§ 1104, 1201(a). Therefore, the agreement is arguably incomplete and not susceptible to interference thereon.

Even assuming arguendo that the case involved a fully effective contract, Northwest has a particularly compelling argument on the merits that it was justified in inducing the breach. There is clearly a strong interest in maintaining freedom of action for shareholders when there still exists a competitive market for shares. To prevent the Oakland directors from providing its shareholders with vital information as to a competing offer clearly would contravene the strong public policy supporting such shareholder freedom of choice.

In the present case, the social interest in the preservation of freedom of action for Oakland's directors outweighed any expectancies of the parties for two reasons. First, a contractual provision which obligates a corporation's officers to adhere to a reorganization plan that is not in the shareholders' best interest would contravene the directors' statutory duties. It is well-established in California that corporate directors are fiduciaries and must exercise their powers "in good faith, and with a view to the interest of the corporation." California Corporations Code § 309(a); *Remillard Brick Co. v. Remillard-Dandini*, 109 Cal.App.2d 405, 241 P.2d 66 (1952). Thus, the directors were obligated to inform the shareholders that the Northwest proposal was in the best interests of the corporation.

Second, there is a strong public policy supporting full disclosure to shareholders of information relating to corporate affairs and transfer of corporate stock. Both

**1012**

the California and federal security laws repeatedly emphasize requirements that shareholders be completely informed as to all material facts when stocks are purchased, sold or sought in a tender offer. *See, e.g.*, Section 10(b) of the 1934 Act; California Corporations Code § 25401; Section 14(d) of the 1934 Act.

In *Bledsoe v. Watson*, 30 Cal.App.3d 105, 106 Cal.Rptr. 197 (1973), the California court confronted a factual situation somewhat analogous to that in the present case. In *Bledsoe*, the plaintiff, a lawyer, had entered into a contract with the City of Seal Beach to provide certain legal services. One Mr. Watson wrote a letter to the city treasurer seeking to prevent the expenditure of funds for Mr. Bledsoe's services because he thought such an expenditure was illegal. After his contract was terminated, Bledsoe brought an action for tortious interference with contractual relations to which the court sustained the defendants' demurrer on the ground of justification.

The *Bledsoe* court determined that justification for interference with contractual relations is closely analogous to privileges in defamation, and that the tort of interference with contract cannot be used to close the channel of communication through which citizens express their grievances to public officials. *Id.* at 110, 106 Cal.Rptr. 197. The court held, therefore, that the public policy in favor of an informed and participating policy outweighed any interest plaintiff had in the stability of his contract.

Similarly in the present case, the public policy repeatedly articulated in the state and federal security laws requiring disclosure of information to shareholders and favoring free competition in tender offer situations outweighs for purposes of analysis at the injunction stage any interest Jewel had in the stability of its contract.

*CONCLUSION*

It was therefore ordered that Jewel's Motion for a Preliminary Injunction was denied. The parties hereto will hereby appear before this court on April 15, 1981 at 11:00 a. m. for a status conference in this case.