**JEWEL COMPANIES, INC., a New York corporation, and Jewel Acquisition Corp., a California corporation, Plaintiffs,**

v.

**PAY LESS DRUG STORES NORTHWEST, INC., a Maryland corporation, et al., Defendants.**

**No. C–80–0023 SW.**

United States District Court, N.D. California.

June 1, 1982.

Stephen V. Bomse, Daniel E. Titelbaum, Christina Hall, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiffs and counter-defendants Jewel Companies, Inc. and Jewel Acquisition Corp.

Richard W. Canady, Stuart R. Pollak, Robert E. Gooding, Jr., H. Mathew Moore, Howard, Prim, Rice, Nemerovski, Canady & Pollak, A Professional Corp., San Francisco, Cal., Arthur B. Kramer, Robert M. Heller, Alan R. Friedman, Kramer, Levin, Nessen, Kamin & Soll, New York City, for defendants and counter-claimant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

### FACTUAL BACKGROUND

On November 9, 1979, plaintiff Jewel Companies, Inc. and its subsidiary Jewel Acquisition Corporation [collectively "Jewel"] entered into a merger agreement with the directors of Pay Less Drug Stores of Oakland, California [Pay Less Oakland]. This agreement contemplated Jewel's acquisition of Pay Less·Oakland in a tax-exempt exchange of stock at a pre-fixed ratio. The offer was said to be worth approximately $14.75 for each share of Pay Less Oakland's common stock. Consummation of the merger agreement was conditioned upon obtaining approval of Pay Less Oakland's shareholders. Pay Less Oakland's directors agreed to use their "best efforts" to complete the merger.

After the Jewel proposal was publicly announced, the management of Pay Less Drug Stores Northwest, Inc. [Pay Less Northwest] attempted to acquire Pay Less Oakland by offering shareholders a competing bid. On December 28, 1979, Pay Less Northwest stated its intention to make a cash tender offer at the price of $22.50 per share. Thereafter, on January 7, 1980, Pay Less Northwest sent a letter to Oakland's Board of Directors proposing an alternative merger between Pay Less Oakland and Pay Less Northwest and offered a cash price of $22.50.

On February 1, 1980, Pay Less Northwest entered into an agreement with Pay Less Oakland under which Pay Less Northwest increased its tender offer from $22.50 to $24.00. Based on this increased price and Jewel's failure to increase its own offer, Oakland's Board of Directors unanimously recommended to its shareholders that they accept Pay Less Northwest's tender offer. In making its recommendation, the Oakland Board provided the shareholders with a complete history of the two offers and a discussion of the facts relevant to their decision.

Jewel filed this action in state court and it was removed to this court on the basis of diversity. On February 6, 1980, this court denied Jewel's application for preliminary injunction, 510 F.Supp. 1006.

On March 4, 1980, the Jewel agreement was rejected by a majority of Oakland shares. By that date, Pay Less Northwest had acquired more than fifty percent of the outstanding shares of Pay Less Oakland. The Oakland Board of Directors, reconstituted to include a majority of Pay Less Northwest representatives, terminated the Jewel agreement. On March 7, 1980, Pay Less Northwest tendered 297,010 shares of Oakland stock for purchase at $24.00 per share. Subsequently, the Pay Less Northwest merger was found fair by the California Department of Corporations and the merger was approved by shareholder vote. Pay Less Oakland thus became a wholly owned indirect subsidiary of Pay Less Northwest.

This matter comes before the court on the parties' cross motions for summary judgment. Oral argument was heard on February 24, 1982. After careful consideration of the entire record, this court finds as a matter of law that there was no binding contract between Jewel and Pay Less Oakland. Since plaintiff Jewel's claims against Pay Less Northwest for interference with contract and interference with prospective advantage lack merit its motions for summary judgment must be denied and defendant Pay Less Northwest's motion for summary judgment must be granted.

DISCUSSION

 The threshold issue is that under California law, to establish liability for tortiously inducing a breach of contract, a plaintiff must establish the existence of a valid contract, *H & M Associates v. City of El Centro,* 109 Cal.App.3d 399–405, 167 Cal. Rptr. 392 (1980). The Jewel merger agreement never was approved by the Oakland shareholders. Section 8.5 of the proposed Jewel agreement itself required shareholder approval before consummation of the merger. In addition, California law requires shareholder approval before merger con-summation, California Corporations Code § 1201(a).

While it is true that the Oakland Board of Directors agreed to use their best efforts to complete the merger, it is also true that Jewel and its shareholders did not have then, and do not have now, an unequivocal right to the benefits of the merger. The power to approve the merger rested with the Oakland shareholders, and the Jewel agreement imposed no duty on those shareholders to ratify the merger agreement. See, *Belden Corporation v. Internorth, Inc.,* 90 Ill.App.3d 547, 45 Ill.Dec. 765, 413 N.E.2d 98, 102 (1980).

Jewel argues that the statutory requirement of shareholder approval is a condition precedent, the lack of which would not defeat the enforceability of the contract. This court does not agree. A fundamental concept of contract law is that only the offeree has the power to accept a contract. See, 1 Corbin, *Corbin on Contracts* § 56 (1963). This law applies with equal force in a tender offer situation such as here. As the Second Circuit recently commented, "What is sometimes lost sight of in these tender offer controversies is that the shareholders, not the directors, have the right of franchise with respect to the shares owned by them ...." *Conoco, Inc. v. Seagram Co.,* 517 F.Supp. 1299, CCH Fed.Sec.L.Rep. ¶ 98,234 at 91,557 (S.D.N.Y.1981), aff'd without opinion, 661 F.2d 907 (2d Cir.1981).

Arguendo, even if this court found that the Jewel agreement was binding on Pay Less Oakland, there are competing interests present in a tender offer situation that justify Pay Less Northwest's so-called "interference." Basic California corporations law mandates that a corporate director observe high standards of fiduciary duty towards the shareholders. *See,* California Corporations Code § 309(a); *Remillard Brick Co. v. Remillard-Dandini,* 109 Cal.App.2d 405, 419, 241 P.2d 66 (1952). When Oakland's directors were presented with Pay Less Northwest's offer, the directors had a duty to compare the two offers, and then recommend the more attractive offer to the shareholders. This was done, and the facts

are not in dispute. A basic underlying theme of this country's legal system is the appreciation of free enterprise and healthy competition. Jewel's motion for summary judgment is contrary to this theme. The marketplace is the proper forum to resolve competing tender offers.[1] Unless a plaintiff corporation can carry its burden of proof that laws were broken, it is not the place of this court to intervene.

## JUDGMENT

IT IS HEREBY ORDERED that Judgment be, and hereby is, entered for the defendants in the above-captioned case.

IT IS SO ORDERED.

---

1. It has been persuasively argued that the protections embodied in the Williams Act, 15 U.S.C. § 78m *et seq.* (1968) and parallel state tender offer laws hinder rather than encourage competition in this area. *See, e.g.,* Easterbrook and Fischel, Takeover Bids, Defensive Tactics, and Shareholders' Welfare, 36 The Business Lawyer 1733 (1981); Jarrell and Bradley, The Economic Effects of Federal and State Regulations of Cash Tender Offers, The Journal of Law and Economics, Vol. XXIII, October, 1980. The rationale underlying these arguments is that corporations seeking to acquire a target firm will not expend the time and money that is required if they are then forced to wait and enter into a bidding war with other firms that could "freeload" on the initial firm's research. Many of these commentators have reasoned that corporate acquisition laws, like laws in the patent area, should protect the research and pre-bid expenditures of the initial tender offeror.

Notwithstanding these arguments, however, no one disputes that once a tender offer is made, as in the present case, the Board of Directors of the target firm have an obligation to recommend acceptance of any more attractive offers. Whether this duty requires the Directors to *affirmatively* seek out other offers is not before the court at this time.