BELDEN CORPORATION, Plaintiff-Appellee, *v.* INTERNORTH, INC., *et al.* Defendants-Appellants.—(VIRGINIA WERMINE *et al.*, Intervenors-Appellees.)

First District (2nd Division)     No. 80-2596

Opinion filed November 10, 1980.

James W. Kissel, of Sidley & Austin, of Chicago, and John L. Warden, of Sullivan & Cromwell, of New York, New York, for appellants.

Reuben & Proctor, of Chicago (Don H. Reuben, of counsel), for appellee Belden Corporation.

Arvey, Hodes, Costello & Burman, of Chicago (Nathan M. Cohen, of counsel), for appellees Virginia Wermine *et al.*

Mr. JUSTICE STAMOS delivered the opinion of the court:

Belden, Inc., filed an action in the Chancery Division of the circuit court to enjoin InterNorth and its wholly owned subsidiary, I N Holdings, Inc. (herein collectively referred to as InterNorth), from proceeding with a tender offer for Crouse-Hinds, Inc. (Crouse). Belden and Crouse had, prior to the tender offer, entered into a contract paving the way for a merger of Belden and Crouse. Belden's action was predicated on the torts of interference with contractual relations and interference with prospective advantage. A number of Belden shareholders were permitted to intervene as representatives of the class of Belden shareholders; the intervenors allege that InterNorth's tender offer interfered with their prospective advantage. The trial court granted the preliminary injunction requested by Belden and the intervenors, and InterNorth has taken this interlocutory appeal.

InterNorth is an Omaha-based corporation (chartered in Delaware) that, over the past several months, had been evaluating the possible acquisition of Crouse, a New York corporation based in Syracuse. Unknown to InterNorth, Crouse, for a similar length of time, had been engaged in merger discussions with Belden, a corporation based in Geneva, Illinois (chartered in Delaware). The management of InterNorth had planned to propose, at the September 9, 1980, meeting of the board of directors, that InterNorth undertake a tender offer for a majority of Crouse shares. A few hours before the meeting, InterNorth's management learned that Crouse and Belden had executed, on September 8, 1980, an agreement to merge.

The Belden-Crouse agreement recited that Belden would merge with Coppertime, Inc. (a wholly owned Crouse subsidiary), and that Coppertime would be the surviving corporation. The agreement set forth specific duties of the management of both parties. Crouse's and Belden's management promised to present the proposed merger to their respective shareholders within a specified period of time and to recommend approval. Other clauses required, in effect, that the corporations not alter their business and financial postures prior to consummation of the merger.

InterNorth's extensive acquisition plans had been focused on Crouse, and the evidence reflected that InterNorth was financially and logistically unprepared to consider a takeover of both Crouse and Belden. InterNorth elected to go forward with its tender offer for Crouse. On the morning of September 12, 1980, InterNorth's president phoned Crouse's chief executive officer to advise him that a tender offer would be advertised in that morning's edition of the Wall Street Journal. Later that day, InterNorth delivered a letter to Crouse's corporate offices, outlining in a very general sense its plans for Crouse should the tender offer succeed.

The tender offer advertisement, as it appeared in the Wall Street Journal, contained one boldface paragraph that did not appear in a draft of the offer prepared prior to the announcement of the Belden-Crouse agreement. That paragraph provided:

> "The Offer is not conditioned upon any minimum number of Shares being tendered. The Offer is conditioned upon the previously announced merger of the Company [Crouse] and Belden Corporation ("Belden") being rejected by the shareholders of either the Company or Belden or the termination of the merger agreement by the parties thereto."

Three days later, Belden filed the instant action for inducement of breach of contract and tortious interference with prospective advantage. On September 23, Belden and Crouse amended their agreement to allow an immediate exchange of shares. Under this provision, Belden's shareholders could exchange (according to a specified ratio, and not exceeding 47% of outstanding shares) their shares for Crouse treasury shares. Since the Beldon shareholders who participated in the exchange became Crouse shareholders (the same result the anticipated merger would have), and since Crouse would acquire control of Belden proportionate to the number of shares exchanged, this agreement permitted a partial "merger" of Belden and Crouse without the need for approval of Crouse's shareholders.

InterNorth's takeover bid spawned litigation in several forums. InterNorth petitioned the New York Supreme Court to order Crouse to provide InterNorth with a shareholder list. That petition was denied, and an appeal is pending in the appellate division of that court. Meanwhile, Crouse filed an action in the United States District Court for the Northern District of New York, seeking to halt the tender offer because of alleged violations of Federal securities law. That claim is still pending, but on a counterclaim filed in that court by InterNorth, the district court granted InterNorth's motion to enjoin the share exchange between Belden and Crouse. Crouse has appealed that decision to the Court of Appeals for the Second District.

■■ InterNorth claims in the instant appeal that the trial court's grant of the preliminary injunction was improvident, as the plaintiff's and intervenors' claims failed to satisfy the prerequisites for a preliminary injunction. Additionally, InterNorth argues that the injunction fails to preserve the *status quo* pending trial, as it permits Belden and Crouse to proceed with the share exchange, thereby "stacking the deck" in favor of shareholder approval of the merger. If the injunction is found improvident, InterNorth's second contention need not be addressed. In evaluating the trial court's action, however, this court may neither sift the evidence anew

nor consider the merits of the case. (*Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 698, 368 N.E.2d 1010.) The issuance of a preliminary injunction is a matter within the discretion of the trial court, and the decision below will not be reversed without a showing of abuse of discretion or error of law. (*K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1020, 335 N.E.2d 156.) One such error of law would be the issuance of a preliminary injunction where the plaintiff has not satisfied his burden of persuasion as to the four elements required. These elements are: (1) the plaintiff must have no adequate remedy at law, and show an irreparable injury if the injunction is denied; (2) the threatened injury to the plaintiff must be immediate, grave, and certain, and the inconvenience suffered by the defendant as a result of the injunction must be relatively minor; (3) the plaintiff must show a reasonable likelihood of prevailing on the merits; and (4) the injunction, if granted, must not cause injury to the general public. *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420.

■■ In evaluating the propriety of the preliminary injunction, this court must also consider, in relation to the foregoing requirements, the nature and elements of the torts alleged. The torts of interference with contractual relations and interference with prospective advantage are closely allied. Both recognize that a person's business relationships constitute a property interest and as such are entitled to protection from unjustified tampering by another. (See *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 362, 300 N.E.2d 331.) Both causes of action imply a balancing of societal values: an individual has a general duty not to interfere in the business affairs of another, but he may be privileged to interfere, depending on his purpose and methods, when the interference takes a socially sanctioned form, such as lawful competition. (See also *Herman v. Prudence Mutual Casualty Co.* (1969), 41 Ill. 2d 468, 473, 244 N.E.2d 809.) The difference between the two torts is that the tort of interference with contractual relations affords a greater degree of protection to the parties to a business relationship. The sacrosanct contractual relation takes precedence over the conflicting rights of any presumptive interferor, including his right to compete and his own prospective advantage. Prosser, Torts §129, at 945 (4th ed. 1971).

■■ The elements of the tort of interference with contractual relations are set out in *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429. These include: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

(*Zamouski*, at 897.)[1] The elements of the tort of interference with prospective advantage are similar, but not identical. The plaintiff must have a reasonable expectancy of entering a valid business relationship, and defendant must purposely interfere and defeat this legitimate expectancy, thereby causing harm to the plaintiff. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1973), 16 Ill. App. 3d 709, 713-14, 306 N.E.2d 549; see also Restatement (Second) of Torts §766B (1977); *cf. City of Rock Falls*, at 363 (setting forth a merged list of the elements for both torts).) Unlike the right to receive the benefits of a contract, the right to engage in a business relationship is not absolute, and must be exercised with regard to the rights of others. The rights of others most commonly take the form of lawful competition, which constitutes a privileged interference with another's business. See *Candalaus*, at 48, citing Restatement of Torts §768 (1939).

■■ As noted above, the signal difference between the two torts here considered is the inviolability of the contractual right, and the greater protection given that right. It is also helpful to view the distinction as a matter of expectancies. (See generally *City of Rock Falls*, at 363.) An individual with a prospective business relationship has a mere expectancy of future economic gain; a party to a contract has a certain and enforceable expectation of receiving the benefits of the contract. When a business relationship affords the parties no enforceable expectations, but only the hope of continued benefits, the parties must allow for the rights of others. They therefore have no cause of action against a bona fide competitor unless the circumstances indicate unfair competition, that is, an unprivileged interference with prospective advantage.[2] In sum, as the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases.

Applying the foregoing principles to the facts of the instant case, we observe that Belden does have an enforceable contract with Crouse. This contract gives Belden an unequivocal right to receive the performance of

---

[1] Some formulations of the cause of action include "malice" as a necessary element, but "malice" in this connection means only the intent to interfere without sufficient justification. (*Candalaus Chicago, Inc. v. Evans Mill Supply Co.* (1977), 51 Ill. App. 3d 38, 47, 366 N.E.2d 319; Restatement (Second) of Torts §766, comment *s* (1977).) The term "malice" tends to be amorphous and misleading, and is better omitted. See Prosser, Torts §129, at 928 (4th ed. 1971).

[2] *Cf.* Restatement (Second) of Torts §768, comment *i* (1977) (interference with a contract terminable at will actionable only on the basis of prospective advantage, as plaintiff has no legal assurance of future performance); but *cf. Ancraft Products Co. v. Universal Oil Products Co.* (1980), 84 Ill. App. 3d 836, 844, 405 N.E.2d 1162 (contract terminable at will does not bar recovery for inducement of breach). The weight of authority is contrary to the position taken in the *Ancraft* case (see Prosser, Torts §129, at 946 (4th ed. 1971)).

Crouse's management, *i.e.*, Belden is entitled to have the merger presented and recommended to Crouse's shareholders. Belden and its shareholders do *not*, however, have an unequivocal right to the benefits of the merger, since the power to approve the merger lies with the Crouse shareholders, and the contract imposes no duty on the shareholders to ratify the merger agreement. Belden therefore has an enforceable expectation with regard to the performance of Crouse's management, but has a mere expectancy with respect to consummation of the merger.

■■ These two levels of expectation require that InterNorth's interference with the merger agreement be evaluated by the differing standards of the two business interference torts. If InterNorth is to be held liable for inducing a breach of contract, Belden must show that the contract was in fact breached, or, alternatively, that a breach is imminent and the facts warrant extraordinary relief, that is, an injunction. (See *Herman*, at 477-78.) Belden has not alleged that Crouse's management has breached any contractual duty, nor has Belden offered any evidence supporting the proposition that Crouse would, absent injunctive relief, abrogate the agreement. On the contrary, all the evidence demonstrates that Crouse is firmly aligned with Belden in opposition to InterNorth's tender offer. Examining the contractual rights arising from the merger agreement, we conclude that Belden has satisfied neither the elements of tortious interference with contractual relations, nor the requirements for a preliminary injunction.

■■ Belden's other claim (and the intervenors' sole claim) charges a tortious interference with prospective advantage, that is, the anticipated benefits of the merger. Belden has, in this respect, a mere expectancy, and must therefore forbear other parties' pursuit of legitimate business goals. Belden's prospective advantage is allotted no more protection from privileged activities than the prospective advantage of other parties. Accordingly, Belden cannot meet the requirements for interference with prospective advantage unless it makes a showing of unfair competition on the part of InterNorth. (See *Candalaus*, at 47-48.) Unfair competition, which is not privileged, includes fraud, intimidation, or disparagement. (See Prosser, Torts § 130, at 956 (4th ed. 1971).) The trial court made one finding of fact germane to this issue, determining that the reference to Belden in the boldface paragraph of the tender offer advertisement (set out above) constituted a deliberate disparagement of Belden. This finding is simply unsupported by the evidence. InterNorth's first draft of the tender offer made no reference to Belden because Belden's relationship to Crouse was unknown at that time. The published draft of the tender offer, in stating that shareholder rejection of the proposed merger is a condition of the tender offer, merely identifies the options open to Crouse shareholders. Absent any other proof of InterNorth's purportedly

malevolent intent, the trial court's inference of malice is contrary to the manifest weight of the evidence.

Without a sustainable finding of an unprivileged act on the part of InterNorth, Belden and the intervenors have not satisfied the requirements for a claim of tortious interference with prospective advantage. The preliminary injunction was therefore issued improvidently and is hereby vacated; the cause is remanded for trial on the merits.[3]

Vacated and remanded.

DOWNING and HARTMAN, JJ., concur.

_____

[3] InterNorth presented a motion in this court, accompanied by two affidavits relating to the wording of the tender offer advertisement. A review of the record in this case reveals no reason why the "evidence" reflected in these affidavits could not have been presented in the trial court. The motion is denied.