Dorothy A. STEVENS, Plaintiff,

v.

Dorothy TILLMAN, et al., Defendants.

No. 81 C 3588.

United States District Court,
N.D. Illinois, E.D.

Nov. 26, 1986.

Ronald H. Balson, Chicago, Ill., for plaintiff.

Edward W. Feldman, Thomas E. Johnson, Janet F. Gerske, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiff Dorothy A. Stevens ("plaintiff"), a white woman who formerly was an elementary-school principal in a primarily-black school, brought this action against certain black parents and alleged that the parents successfully sought to remove her from her position as principal solely because of her race.[1] After lengthy discovery, unsuccessful settlement attempts and many other delays, the case finally reached the trial stage before this court starting in September of 1986. After the plaintiff completed her case in chief, the defendants moved this court for a directed verdict on all three counts of the complaint pursuant to rule 50(a) of the Federal Rules of Civil Procedure. For the reasons discussed in this Memorandum Opinion and Order, the court grants the defendants' motion for a directed verdict on Count III, but denies the motion for a directed verdict on Counts I and II. The court will address each of the counts in order.

## I

### Count I—42 U.S.C. § 1985(3)

Count I of the plaintiff's complaint alleges that the defendants conspired to deprive the plaintiff of her civil rights in violation of 42 U.S.C. § 1985(3). Judge Nordberg set forth the five required elements of a § 1985(3) claim in his Memorandum Opinion and Order denying the defendants' motion to dismiss. *Stevens*, 568 F.Supp. at 292. The plaintiff must establish the following five separate elements:

(1) a conspiracy

(2) motivated by racial or other class-based invidious discriminatory animus and

(3) established for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws;

(4) that the conspirators committed some act in furtherance of the conspiracy;

(5) that the plaintiff was either injured in his person or property or was deprived of having and exercising any right or privilege of a citizen of the United States.

*Id. (citing Griffin v. Breckenridge*, 403 U.S. 88, 102–3, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)).

In their motion for a directed verdict, the defendants make two distinct arguments for dismissal of this count.[2] When considering these arguments, the court must make its determination on the merits of the argument based on the standards for deciding a motion for a directed verdict. The court must view all the evidence, taken as a whole, in the light most favorable to the nonmoving party. *Selle v. Gibb*, 741 F.2d 896, 900 (7th Cir.1984). If the evidence would permit a reasonable juror to find in

---

1. The facts of this case are detailed fully in Judge Nordgerg's Memorandum Opinion and Order denying the defendants' motion to dismiss. *See Stevens v. Tillman*, 568 F.Supp. 289, 291 (N.D.Ill.1983).

2. The defendants did not raise any of the arguments discussed in this Memorandum Opinion and Order in their motion to dismiss, nor did Judge Nordberg address these arguments in writing his Memorandum Opinion and Order on that motion. *See Stevens*, 568 F.Supp. at 289.

favor of the nonmoving party, a directed verdict is improper. *United States v. An Article of Device,* 731 F.2d 1253, 1257 (7th Cir.1984). The court will consider each of the defendants' arguments in turn.

### A. The Defendants' First Amendment Right to Petition the Government for Redress

The defendants first assert that they cannot be held liable under § 1985(3) because their allegedly unlawful acts and words were part of their effort to petition the government for redress. They argue that they were exercising their First Amendment right to petition when they spoke before the Board of Education, leafletted, picketed and boycotted the school.

█ It is the law in this circuit that a defendant's exercise of the right to petition precludes an action under § 1985(1). *See Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1345–46 (7th Cir.1977), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Over the objection of the plaintiff, this court finds that the valid exercise of the right to petition also undermines an action under § 1985(3). When discussing § 1985(1), the Seventh Circuit expressed a general concern that it not interpret the statute so as to interfere with established constitutional rights.[3] The Seventh Circuit did not base its holding purely on a concern derived from the language of § 1985(1). Instead, the court applied the basic principle this court must apply in construing § 1985(3), i.e., that it seek a reasonable construction consistent with its legislative purpose so as to avoid serious constitutional doubt. *Id.* at 1344. The fact that this case involves a discrimination claim against a state as opposed to a federal official is irrelevant to the court's determination. The public criticism of governmental policy, whether state or federal, and those responsible for government operations is at the very core of the constitutionally-protected area of free speech. *Cf. Stern,* 547 F.2d at 1342. Since the essence of both *Stern* and this case is that a public citizen complained

to the supervisor of a government employee about that employee's performance in his/her job, the court finds no reason to distinguish the cases. *See Stern,* 547 F.2d at 1345 (a taxpayer lodged a complaint about an IRS agent through the proper channels).

The allegations that the defendants' made defamatory statements about the plaintiff do not change the court's holding in this regard. In *Stern,* the Seventh Circuit expressly held that the mere fact that the defendant's petition to the government involved false statements did not change its ruling regarding § 1985(1). *Id.* As in *Stern,* the potential chill of the right to petition engendered by a knowing-falsity rule moves this court not to adopt such a rule. *Id.*

In *National Association for the Advancement of Colored People v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), the Supreme Court defined the circumstances in which an individual's activities are protected by the right to petition. The Court determined that peaceful, "nonviolent" activities are protected, but that "violence" is not. *Claiborne Hardware Co.,* 458 U.S. at 915–16, 102 S.Ct. at 3426–27. Specifically, the court held that the speeches made and nonviolent picketing done during a boycott of local merchants in Mississippi were entitled to protection under the First and Fourteenth Amendments. *Id.* at 907, 102 S.Ct. at 3422. In so holding, the Court recognized that the express purpose of the Mississippi boycott was to influence governmental action, and affirmed the importance of a nonviolent, politically-motivated boycott as a means to effectuate change in governmental policies and practices. *Id.* at 914, 102 S.Ct. at 3426.

█ In this case, the defendants' objective was to have the plaintiff removed as principal at the Mollison School by the Chicago Board of Education. Stated differently, the defendants were unhappy with the way a governmental employee was per-

---

3. "But we are not free lightly to impute to Congress an intention to invade the right to peti- tion." *Stern,* 547 F.2d at 1344.

forming on the job and petitioned her supervisor through various means to change the status quo. This kind of activity is at the core of the First Amendment right to petition the government for a redress of grievances. As already stated, it matters not that the defendants allegedly defamed the plaintiff in petitioning their government for redress. *See supra* at 705. The sole question for the court's consideration at this juncture is whether the defendants' activities could be characterized as "violent" or "nonviolent" within the meaning of *Claiborne Hardware Co.*

For purposes of § 1985(3), the court finds that the First Amendment protects many of the activities alleged in the complaint under Count I. These protected activities include the following:

(1) the publication of defamatory statements both through leaflets and news media (Complaint at 3, ¶ 6(A));

(2) the appearance in groups at various locations, including the offices of the Chicago Board of Education, for purposes of demanding the removal of the plaintiff as principal (Complaint at 3, ¶ 6(B));

(3) holding meetings with various Board of Education officials (Complaint at 3, ¶ 6(D));

(4) causing a student boycott of the school for several days (Complaint at 4, ¶ 6(E)).

With respect to these activities, the court finds the cases cited by the plaintiff distinguishable from this one either because they are not § 1985 cases or because the defendants did not raise the right to petition as a defense to a § 1985 claim. *See Fisher v. Shamburg,* 624 F.2d 156 (10th Cir.1980) (right to petition not an issue); *Harris v. Harvey,* 605 F.2d 330 (7th Cir.1979), *cert. denied,* 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980) (a § 1983 claim to which the right to petition was not raised as a defense); *Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499 (9th Cir.1979) (right to petition not an issue). The court reemphasizes that the basis for its holding regarding the protection of these activities is that they involve the right to petition in conflict with an alleged § 1985 claim. *See supra* at 705.

However, the complaint also alleges that the defendants appeared at the elementary school and trespassed on school grounds and corridors. Complaint at 3, ¶ 6(C). The plaintiff has also introduced evidence at trial that some of the defendants at one point were in the principal's office and instructed the plaintiff to leave. In doing so, Dorothy Tillman ("Tillman"), one of the defendants present during the scene at the principal's office, testified that the plaintiff was "frightened" during the incident. The defendants claim that their activities surrounding this incident are also constitutionally protected. The court recognizes that it cannot merely pass on to the jury the question of whether the Constitution protects this activity. The court has a responsibility as the interpreter of the Constitution to resolve the question of whether these activities are "nonviolent" within the meaning of *Claiborne Hardware Co. See, e.g., Plato v. Roudebush,* 397 F.Supp. 1295, 1306 (D.Md.1975) (the judiciary's authority to enforce its interpretation of the Constitution is not diminished by the fact that the legal issue is close or difficult; whether the Constitution requires a particular result is a manifestly judicial function).

The court, however, is uncomfortable with the prospect of deciding this constitutional issue based merely on the record before it. The Supreme Court repeatedly has emphasized that constitutional questions should not be decided except upon a full record and after adequate hearing. *See, e.g., Cowgill v. California,* 396 U.S. 371, 372, 90 S.Ct. 613, 614, 24 L.Ed.2d 590 (1970) (the Court dismissed an appeal where the appellant did not present evidence on the constitutional question at trial nor urge any standard at trial for determining the issue). The court is aware that the parties could not reasonably foresee that this particular constitutional issue would arise at trial and that the parties have not briefed this issue. Consequently, the court will reserve ruling on this question until the close of all evidence in the case and

until the parties have fully briefed the issue.[4]

### B. The Existence of Racial Animus

 The defendants also argue that, even if the plaintiff does have a right to relief under § 1985(3), she has failed to show that the defendants acted with the requisite racial animus. *Citing Griffin*, 403 U.S. at 101–02, 91 S.Ct. at 1798. According to the defendants' argument, the plaintiff must show that *that* defendant entered into a conspiracy to remove the plaintiff because she was white. *Citing Selzer v. Fleisher*, 629 F.2d 809, 813–14 (2d Cir.1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981).

Based on the evidence the court has heard up to this point, however, the court, viewing that evidence in a light most favorable to the plaintiff, finds a reasonable juror could find that the requisite racial animus existed for each defendant and that but for that racial animus the parents would not have acted in the same manner. With respect to the defendant Tillman, the court does not find it necessary to list the specific statements or acts of Tillman the court relies on in support of this holding. Deciding the question of whether a "racial ... invidiously discriminating animus"[5] existed involves evaluating all the circumstances surrounding each statement or act, considering the background of the defendant and judging the credibility of her testimony in this regard. After considering these and other relevant factors, the court cannot direct a verdict on the grounds that Tillman did not possess the requisite racial intent.

The question of whether the other defendants had that same intent is a more difficult issue, but the court reaches the same conclusion. In making this determination, the court places special reliance on the fact that all of the other defendants were present at the meeting before the Board of Education on January 14, 1981. At that meeting, Tillman discussed her views concerning the plaintiff and alleged among other things that the plaintiff was a "racist." *See* Complaint, Exhibit A at 38. According to the evidence presented, the other defendants silently listened to Tillman and at times shouted words of encouragement. Defendants Curtis Slate and Cheryl Morris gave their speaking time before the Board to Tillman. Defendant Gladys Hampton spoke after Tillman and stated that the school was being run like a "dictatorship." *Id.* at 43.

In light of this incident at the Board as well as all the circumstances surrounding the boycott at the school, the court again cannot direct a verdict based on the lack of racial animus with respect to the defendants other than Tillman. In so holding, the court abides by the settled principle that if it has doubts about whether to grant a motion for directed verdict, the better practice is to deny the motion and let the jury return a verdict. *See Etling v. Sander*, 447 F.2d 593, 594 (7th Cir.1971); 5A J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 50.05[3] (2d ed. 1986).

For the foregoing reasons, the defendants' motion for a directed verdict on Count I at the close of the plaintiff's case in chief is denied.

## II

### Count II—Defamation

In Count II, the plaintiff alleges that the defendants maliciously defamed the plaintiff in certain statements made before the Board of Education, other statements made to reporters or on television shows, and various flyers that the defendants distributed. The defendants, in their motion for a directed verdict on Count II, argue that this count should be dismissed for a number of reasons. The court again will ad-

---

**4.** In so holding, the court notes the existence of an Illinois statute which provides that entering government-supported land after receiving notice that such entry is forbidden is criminal trespass. *See* Ill.Rev.Stat. ch. 38, ¶ 21–5 (1985). The court also notes that a person commits criminal assault in Illinois when, without lawful authority, the person engages in conduct which places another in reasonable apprehension of receiving a battery. *See* Ill.Rev.Stat. ch. 38, ¶ 12–1 (1962).

**5.** *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798.

dress each of the defendants' arguments in turn.

### A. Statements Not Of and Concerning the Plaintiff

The defendants first argue that a number of the allegedly defamatory statements do not mention or refer to the plaintiff in any way, and that therefore the statements are not actionable. The current Illinois standard employed in examining statements alleged to be defamatory is set forth in *Chapski v. Copley Press*, 92 Ill.2d 344, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982). Under *Chapski*, the court is to consider a written or oral statement in its context, with the words and the implications therefrom given their natural and obvious meaning. *Chapski*, 65 Ill.Dec. at 888, 442 N.E.2d at 199. If, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable per se. *Id.* The preliminary determination of whether the statements are actionable is a question of law to be resolved by the court in the first instance. *Id.*

■ In this regard, the first statements at issue are those made by Tillman before the Board of Education on December 17, 1980. *See* Complaint, Exhibit B. Tillman was informing the board of the "problems" at the school. *Id.* The only statement made of or concerning the plaintiff at that time was the statement "we went to the principal." Tillman made no arguably defamatory remarks about the plaintiff at this meeting. Consequently, the court rules that as a matter of law the statements made at the December 17, 1980 meeting did not defame the plaintiff.

■ The court makes the same ruling with regard to all of the flyers attached to the complaint as Exhibits C and D except for the flyer entitled "We have exposed the Mollison pollution; now we must find the Mollison solution." Only the latter flyer mentions the plaintiff by name. All of the others fail to mention the plaintiff explicitly, and the court cannot reasonably construe these others to defame the plaintiff.

### B. Statements Constitutionally Protected as Opinions

The defendants also argue that the First Amendment insulates a number of statements from the reach of libel law because they are statements of opinion, not fact. *Citing Gertz v. Welch*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974); *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 487 (7th Cir.1986). Since this is an issue of law, the court cannot leave this question for the jury to decide. *See Ollman v. Evans*, 750 F.2d 970, 978 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).

■ The parties do not dispute that, when deciding the constitutional fact/opinion issue, the court must weigh four factors in light of the totality of the circumstances:

(1) whether the statement has a precise meaning for which a consensus of understanding exists, or whether it is indefinite and ambiguous;

(2) whether the statement is capable of objective verification as true or false;

(3) whether, considering the full context of the statement, the average person would infer that the particular statement has a factual context;

(4) whether the broader context or setting in which the statement appears signals that the statement is fact or opinion.

*Id.* at 979. *Accord Brown & Williamson v. Jacobson*, 644 F.Supp. 1240, 1256 (N.D.Ill.1986) (Hart, J.).

The court, however, is not to apply this four-part test in a wooden, mechanical fashion. Rather, the court is to use the four-part test to assist it in evaluating the totality of the circumstances surrounding the statement. *See Ollman*, 750 F.2d at 979.

■ In light of the law on this issue, the court agrees with the defendants that many of the allegedly defamatory remarks made concerning the plaintiff are constitu-

tionally protected as opinion.[6] First, the court considers a portion of the statements made by Tillman before the Board of Education on January 14, 1981. Specifically, the court finds the following statement to be constitutionally protected under the totality-of-the-circumstances test:

> We found in our investigation that our principal must be removed. And we are going to do whatever is necessary to remove her, and we will call it to you, the Board members, to investigate and to remove her. Our principal is very insensitive to the needs of our community, which happens to be totally black. She made very racist statements during the boycott. She is a racist. She must go. We cannot have racist people around our children.... She made numbers of very racist statements, so many so I would use all of my time to explain to you some of the statements that were made.

> Complaint, Exhibit A at 38.

The court also finds the following statement by Tillman made at the same meeting to be protected:

> We had two alternative sites, and our alternative sites are still in place. We are right now looking for those alternative sites because if Miss Stevens is not removed, we will be pulling our kids out again. She is a very racist woman. She is not good for the community, Dr. Smith. Not only that, Miss Stevens is so insensitive, not only to the children but to the mothers.... She runs that school like a plantation.

> Id. at 39–40.

The following statement made before the Board on the same date is also protected:

> So what we are saying at Mollison is that Miss Stevens must go. By any means necessary we are going to remove her. Our children are afraid of her. I think discipline is fine. The child must respect the principal; he or she must respect the teachers. But I mean there is no sense—and our children feel as though they are on a plantation. And there is no

reason in 1981 whey we should have a principal making such racist statements. Id. at 40.

The court also finds that the following statement made by the defendant Gladys Hampton before the Board on January 14, 1981 is a statement of constitutionally-protected opinion:

> The teachers of the school have brought to most of our attention that it has been run as a dictatorship, and we do not need a dictatorship in our children's school.... They're being degraded and put down, and it's all because of a dictatorship with Miss Stevens.

> Id. at 43–44.

Attached as part of Exhibit C to the complaint is a flyer entitled "We have exposed the Mollison pollution; now we must find the Mollison solution." The flyer does mention the plaintiff by name, but the court holds that the following excerpts from that flyer are protected as statements of opinion:

> We have exposed the Mollison pollution.... Since 1975, the quality of education has gone down at Mollison School and Miss Stevens has sat and watched it. She did nothing about it.... Miss Stevens is insensitive to the children, the parents and the community. We can no longer allow her to destroy our children's minds. She must go....

> If this is what she feels, maybe that's why our children are not learning. She must go!

> The parents refuse to accept "Steven's Law" anymore. We can't sit by and allow our school and our children's education to continue to go down hill.

> In our investigation we found Miss Stevens to be the main problem. She can't be part of the solution. Miss Stevens must go. We are in the process of removing Miss Stevens.

> Complaint, Exhibit C.

The plaintiff alleges that a number of statements made by Tillman to reporters

---

**6.** The court discusses the reasons for its findings later in this Memorandum Opinion and Order.

*See infra* at 710–11.

were defamatory, including the statements "I don't know if she is responsible for what she is saying," "Miss Stevens is the major obstacle in the path of Mollison's improvement" and "Miss Stevens is miseducating our children." [7] *See* Complaint, Exhibits E, F and G. The complaint also alleges that the defendants accused the plaintiff of being a "racist," "being insensitive to the needs of Mollison pupils" and running the Mollison School "like a plantation." Complaint at 6, ¶ 20. The court finds that the First Amendment protects each of these statements as well.

These disputed statements are merely forms of hyperbole and metaphor. They are not objectively verifiable, but instead are statements which are vague and ambiguous. *See e.g., Buckley v. Littell,* 539 F.2d 882, 890–94 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 786, 50 L.Ed.2d 777 (1977) (calling plaintiff "fascist" is protected). The social context in which the statements were made was one in which no reasonable listener or reader would construe these statements as statements of fact. In so holding, the court takes special note of the fact that oftentimes during the examination of witnesses, plaintiff's counsel asked the witness if in the witness' *opinion,* it was true that the plaintiff was a "racist," that the plaintiff "ran the school like a plantation," or that the plaintiff was "miseducating" the children.

As discussed earlier, the purpose of the activities of the defendants was essentially to petition their government for redress of a grievance they had with their local school. In applying the totality-of-the-circumstances test the court considers it appropriate to factor in the First Amendment values underlying the defendants' activities. *See Janklow v. Newsweek, Inc.,* 788 F.2d 1300, 1304 (8th Cir.1986). Speech about government and its officers, about how well or badly they carry out their duties, lies at the very heart of the First Amendment. *Id.*

The plaintiff contends that since the defendants did not disclose the facts which formed the basis of their opinion at the time they voiced their opinion, their opinions are actionable. *Citing Howell v. Blecharczyck,* 119 Ill.App.3d 987, 75 Ill.Dec. 500, 511, 457 N.E.2d 494, 505 (1st Dist. 1983) (an opinion implying alleged undisclosed defamatory facts is actionable). The basis for this contention reaches back to the Restatement (Second) of Torts § 566 which provides the following:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

In response to this argument, the court first notes that for many of the opinions voiced by the defendants, the defendants also mentioned some of the reasons for their opinion in the nature of facts surrounding the conditions at the school. Second, and more importantly, this court finds that the inquiry suggested by the Restatement Second is already incorporated in the totality-of-the-circumstances test applied by this court. *See Ollman,* 750 F.2d at 984–85 (the four-part test is a sufficient aid in determining whether a statement implies the existence of undisclosed facts).

In support of her argument that Tillman's statement that the plaintiff is a "racist" is not protected, the plaintiff points to a recent case in this district which held that the First Amendment did not protect the statement "they're liars." *Citing Brown & Williamson,* 644 F.Supp. at 1258. The court, however, finds this case distinguishable for the following reasons. In that case, the court held the assertion that Brown & Williamson ("B & W") is a "liar" had a precise core meaning that was verifiable. *Id.* at 1256. The defendant Jacobson charged that B & W falsely denied using the kind of advertising described by the defendant. By determining whether B & W did use such advertising, one could de-

7. The other statements made by Tillman to reporters are similar to statements alredy discussed in this Memorandum Opinion and Order.

termine whether it lied when it denied doing so. In this case, regardless of what the defendants disclosed to this court, the court could not objectively state that the plaintiff is a "racist." The other cases cited by the plaintiff are also distinguishable from the case at bar.[8]

■ With respect to those other statements made by the defendants and alleged in the Complaint, the court finds the First Amendment does not provide protection for them as opinions. Those unprotected statements include the following:

(1) "... one child was doing math at a sixth-grade level and he was an eighth-grade student, and the rest was below." Tillman, January 14, 1981, Exhibit A.

(2) "She called all the parents a bunch of welfare mothers, a bunch of welfare children." Tillman, January 14, 1981, Exhibit A.

(3) "One reason we were able to have an eighty-five to ninety percent effective boycott is because nine out of ten mothers in that school have been told by Miss Stevens that their child needs psychological, not to mention some of the other things she told them." Tillman, January 14, 1981, Exhibit A.

(4) "The teachers are afraid of her.... They are afraid of Miss Stevens. They called me one by one and said 'You're absolutely right. We know what's going on, but if we speak up, she will write us up and we will be—then we'll get dismissed from the school....' We have teachers put in the wrong places. That's one of the reasons our children are not learning." Tillman, January 14, 1981, Exhibit A.

(5) "The children are not being tested when they're supposed to be tested." Hampton, January 14, 1981, Exhibit A.

(6) "Her testing system was not working, yet she would not change it. The results are: only one child doing math on 6th grade level and the majority of the students are reading below grade level. As of today, only half of the students have been tested this year for their levels.... Miss Stevens told several reporters that most of Mollison's parents are on ADC." Flyer, Exhibit C.[9]

(7) "Miss Stevens is sick. She's under doctor's care...." Tillman, statement to reporter of *Chicago Defender*, Exhibit E.

(8) "Miss Stevens is using an illegal testing system." Tillman, June 8, 1981.[10]

The court finds each of the above statements to be statements of precise meaning which are objectively verifiable.

### C. Innocent-Construction Rule

The defendants correctly state that Illinois law provides that under the "innocent-construction" rule, a written or oral statement is to be considered in context, with the words and implications therefrom given their natural and obvious meaning. *See Chapski*, 65 Ill.Dec. at 888, 442 N.E.2d at 199. If, as so construed, the statement may reasonably be innocently interpreted or reasonably interpreted as referring to someone other than the plaintiff it cannot be actionable per se. *Id.*

Applying this standard to the remaining factual statements, the court makes the preliminary determination that these state-

---

**8.** The cases cited by the plaintiff in which "pro-Nazi" and "bigot" were held actionable were both decided before *Gertz*, the Supreme Court case establishing protection for opinions. *See Afro American Publishing Co. v. Jaffe*, 366 F.2d 649 (D.C.Cir.1966) ("bigot"); *Christopher v. American News Co.*, 171 F.2d 275 (7th Cir.1948) ("pro-Nazi"). In *Welner v. Minnesota State Junior College*, 487 F.2d 153 (8th Cir.1973), the court merely held that the plaintiff had a due process right to a hearing to address the racist charge which led to his discharge. The court did *not* state the plaintiff could sue the declarant for making such a statement.

**9.** This is the only statement for which the defendants other than Tillman and Hampton can be held liable under Count II.

**10.** The defendants allege that the plaintiff never introduced direct evidence of this during her case in chief. Unless the defendant can indicate to the court where she introduced such evidence, the court will dismiss this alleged libel. The court finds the alleged statement "Miss Stevens allowed the school to deteriorate" to be a protected opinion.

ments are still actionable. The alternative "innocent" constructions proposed by the defendants do not impress this court as being reasonable in light of the evidence.

### D. Required Intent for Defamation

█ The defendants finally argue that, because the defendants were petitioning their government for redress, the plaintiff bears the burden of proving the defendants had actual malice according to the standard set forth by the Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). *Citing Smith v. McDonald*, 562 F.Supp. 829, 843 (M.D.N.C.1983), *aff'd*, 737 F.2d 427 (4th Cir.1984), *aff'd*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). For the following reasons, the court agrees.

The defendants made the allegedly defamatory statements while they attempted to convince the Board of Education to act regarding the perceived problems at their local elementary school. The Supreme Court recently held that "the right to petition is cut from the same cloth" as the other guarantees of First Amendment. *See McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985). In so holding, the Supreme Court affirmed a North Carolina court which held that, although the right to petition does not afford an absolute privilege, it does afford a qualified one. *See Smith*, 562 F.Supp. at 843. *See also Bradley v. Computer Services Corp.*, 643 F.2d 1029, 1033 (4th Cir.1981). Since the right to petition is co-equal to the First Amendment's other guarantees of free expression, the actual-malice standard of *New York Times v. Sullivan* fully protects the right. *See McDonald*, 105 S.Ct. at 2794 (Brennan, J., concurring).

█ Although the court holds that the actual-malice standard governs this case, the court, viewing the evidence in a light most favorable to the plaintiff, cannot hold that the requisite intent was not present here.[11] Because the court finds some of the allegedly-defamatory statements are not protected by the First Amendment, the court denies the defendants' motion for a directed verdict on Count II.

### III

### Count III—Tortious Interference with the Right of Contract

█ In Count III, the plaintiff alleges that, pursuant to certain Illinois statutes, she enjoyed tenure as a principal and could only be removed from her position after a hearing as provided by law. *Citing* Ill. Rev.Stat. ch. 122, ¶¶ 34–84 and 34–85 (1979). The plaintiff further alleges that by their actions the defendants deprived her of her contractual right to be the principal at the Mollison School.

The evidence, however, does not support the plaintiff's claim that the Board breached its contract with her. The Board still paid the plaintiff in full after she took a medical leave starting on January 29, 1981. The Board then transferred her a few times until she closed her career at Pierce School.

The defendants argue, and this court agrees, that for the plaintiff to recover under Count III she must establish a number of elements, including that the defendants' wrongful conduct caused the Board to breach its contract with the plaintiff. *See Belden Corp. v. Internorth, Inc.*, 90 Ill. App.3d 547, 551, 45 Ill.Dec. 765, 768, 413 N.E.2d 98, 101 (1st Dist.1980). Under Illinois law, the general superintendent with the approval of the Board has the power to transfer a principal to a different school. *See* Ill.Rev.Stat. ch. 122, ¶ 34–8 (1961). While a principal is entitled to written notice before demotion, nothing in the statutory scheme prohibits the Board from ordering lateral transfers of a principal to positions of similar rank and equal salary. *See* Ill.Rev.Stat. ch. 122, ¶ 10–23.8b (1987). *See also Kolz v. Board of Education*, 576 F.2d 747, 749 (7th Cir.1978); *Classroom Teachers Ass'n. v. Board of Education*, 15 Ill.App.3d 224, 227–28, 304 N.E.2d 516, 519 (1st Dist.1973). A transfer is not the same

---

11. The court herein refers the reader to the court's earlier discussion of racial animus. *See supra* at 707. The court does not reach the question of whether the plaintiff is a limited public figure.

as a termination and cannot of itself be said to be a breach of contract. *Heying v. Simonaitis,* 126 Ill.App.3d 157, 161–62, 81 Ill.Dec. 335, 339, 466 N.E.2d 1137, 1141 (1st Dist.1984).

In support of her argument that the court should not direct a verdict on this count, the plaintiff points to the testimony of Dr. Nolan, head of the principal's association. Dr. Nolan testified that an unwritten practice of not transferring principals in good standing existed throughout the school district. The court finds that even if such an unwritten practice existed, it would be in express conflict with the already-discussed statutory scheme. *See Chicago Principals Ass'n. v. Board of Education,* 84 Ill.App.3d 1095, 40 Ill.Dec. 381, 384, 406 N.E.2d 82, 85 (1st Dist.1980) (the statutory powers of boards of education cannot be limited by contract). The plaintiff also cites a case for the proposition that if the defendants caused a modification of the contract it is actionable. *Citing Hannigan v. Sears Roebuck & Co.,* 410 F.2d 285, 291–93 (7th Cir.1969). Even if this court assumes that this proposition is correct, the court finds no modification of the contract between the plaintiff and the Board because the plaintiff *never* had the contractual right to stay at the Mollison School.

For the foregoing reasons, the defendants' motion for a directed verdict on Count III is granted.

### CONCLUSION

Pursuant to the terms of this Memorandum Opinion and Order, the court grants the motion for a directed verdict on Count III, but denies the motion on Counts I and II.