Rupert OTTERBACHER, Plaintiff,

v.

NORTHWESTERN UNIVERSITY and Dr. Geraldine Garner, as agent of Northwestern University, and individually, Defendants.

No. 93 C 4286.

United States District Court, N.D. Illinois, E.D.

Nov. 18, 1993.

Claudia Oney, Gail K. Rabinowitz, Elizabeth Hubbard, Ltd., Chicago, IL, for plaintiff.

Lawrence I. Kipperman, Carolyn Kohn, Sidley & Austin, Chicago, IL, for defendants.

## *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is the motion of defendants Northwestern University ("Northwestern") and Dr. Geraldine Garner ("Garner") (collectively "defendants") to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For reasons outlined below, the court grants the motion in part and denies the motion in part.

## *FACTS*

According to the complaint, plaintiff Rupert B. Otterbacher ("Otterbacher"), hired by Northwestern University in October 1975, possessed a satisfactory performance record during his sixteen and one half years of service. Notwithstanding his unblemished record, Otterbacher was discharged on May 29, 1992. Otterbacher was sixty-one years of age at the time of the discharge. His successor was a younger, female employee who Otterbacher alleges was less qualified for the position. Otterbacher thus claims the discharge was illegally prompted by his age and sex.

At the time of his discharge, Otterbacher held the position of Associate Director of the Walter P. Murphy Cooperative Engineering Education Program ("Co-op Department").

In September 1991, Garner, a female, became Otterbacher's immediate superior as the Assistant Dean and Director of the Co-op Department. From the moment Garner became Otterbacher's supervisor, she allegedly harassed Otterbacher in various respects and placed numerous threatening, "vulgar, insulting, abusive and harassing" phone calls to Otterbacher's residence. The phone calls continued for four months after Otterbacher's discharge.

Although Otterbacher's work performance was satisfactory, Garner allegedly complained that Otterbacher was not getting along with her or other female employees in the Co-op Department and accused Otterbacher of being too old to perform his duties. Otterbacher also alleges that Garner imposed unrealistic and unreasonable deadlines and demands upon Otterbacher. Garner discharged Otterbacher but allegedly informed Northwestern's Associate Vice President of Personnel that Otterbacher resigned. Garner further told Otterbacher that he was discharged because of a lack of communication between them.

Sometime after the discharge, Otterbacher met with the Associate Vice President. During this meeting, the Associate Vice President told Otterbacher that Garner informed him Otterbacher had resigned. Otterbacher denied that he resigned and announced that Garner fired him. Also, Otterbacher played tape recordings of some of the telephone messages Garner allegedly left on his answering machine, but Northwestern took no action.

On June 12, 1992, Otterbacher filed a charge of age and sex discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") naming only Northwestern as the respondent. The body of the Charge, however, mentions Garner, and Garner participated in the ensuing EEOC investigation of Northwestern. The

EEOC issued a Notice of Right to Sue letter on April 19, 1993. Otterbacher filed a five-count complaint against both Northwestern and Garner in July 1993 alleging age and sex discrimination, intentional interference with contractual relationship, intentional infliction of emotional distress, and invasion of privacy. Defendants' motion addresses each claim.

## DISCUSSION

### I. Age and Sex Discrimination Counts.

■ Defendants claim this court does not possess jurisdiction over Otterbacher's claims against Garner under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. because Otterbacher did not name Garner as a respondent in the Charge. A plaintiff is precluded from naming in a discrimination suit a person whom the plaintiff failed to name in a charge of discrimination filed with the EEOC. *Schnellbaecher v. Baskin Clothing Co*, 887 F.2d 124, 126 (7th Cir.1989). Although identifying individuals or entities in a charge is a prerequisite to filing suit against them, it is not a jurisdictional requirement. *Id.* at 126; *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863–64 (7th Cir.1985). Rather, the requirement is more akin to a statute of limitations. *Schnellbaecher*, 887 F.2d at 126.[1]

■ An exception to the requirement that a civil litigant be first named in an EEOC Charge exists where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). To effectuate the reme-

---

1. The court therefore does not consider defendants' motion to dismiss counts I and II as a Rule 12(b)(1) motion. Defendants, however, also submitted an affidavit to support their position on this issue. Although Rule 12(b)(6) focuses on the four corners of the complaint, the court must consider the accusations made in the EEOC charge as well as the investigation when determining whether a plaintiff has satisfied this condition precedent to filing suit. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983). The court therefore accepts the affidavit, as well as the Charge attached to the complaint, and accordingly treats defendants' motion as one for summary judgment on counts I and II under Rule 56. *See* Fed.R.Civ.P. 12(b)(6).

dial purposes of the anti-discrimination laws, courts construe EEOC charges with "utmost liberality"; thus a plaintiff may join all parties sufficiently named or alluded to in the factual statement of an EEOC charge. *Id.* at 906.

■ Because the Charge must be read with utmost liberality, the court finds that Garner falls into the exception to the requirement that defendants be first named in the EEOC charge. First, Garner possessed actual notice of Otterbacher's Charge against Northwestern. Garner, Otterbacher's supervisor, was shown a copy of the Charge and also participated in the EEOC investigation. Further, Garner's name appears in the body of the Charge.

Second, the Charge provided Garner with notice that there were possible charges against *her* such that she had an opportunity for voluntary conciliation and compliance on her own behalf. The Charge sufficiently alludes that Garner was subject of the discrimination accusations because it alleges that she discharged Otterbacher "because of a lack of communication," although Otterbacher's "work performance was satisfactory." Cmplt., Exhibit. A. Additionally, the Charge reports that the verbal harassment began shortly after Garner became Otterbacher's supervisor and that Garner accused Otterbacher of not getting along well with her and with his co-workers. *Id.* There is adequate information in the Charge, construed with utmost liberality, that suggests Garner was involved in the discrimination and thus was a target of the investigation.

■ Garner claims that, during its investigation, the EEOC only inquired about Otterbacher's job performance and the specifics of the Co-op Department. She also claims she was never informed that she was a respondent to the Charge. Nonetheless, a circumscribed EEOC investigation will not thwart a civil complaint comprising allegations like those reasonably contained in the EEOC charge. *See Babrocky,* 773 F.2d at 864 n. 2 (limited investigation not fatal to claim within scope of EEOC charge). Thus, the complaint properly joins Garner as a defendant. Accordingly, defendants' motion as to counts I and II, which the court treats as one for summary judgment, is denied.

## II. *Intentional Interference With Contractual Relationship.*

■ Although count III alleges interference with a contract, Otterbacher does not specifically allege the terms of the contract or whether he was a tenured or at-will employee. This may be important, for an at-will employee may not be able to prevail in a cause of action alleging tortious interference with contractual relations under Illinois law.[2] *See, e.g., Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 656, 568 N.E.2d 870, 877 (1991) (noting split among appellate districts). Nonetheless, the tort of interference with contract is the sister tort of interference with prospective economic advantage. Both claims have similar elements. The primary difference is that the former requires the existence of a valid and enforceable contract, *Belden Corp. v. Internorth, Inc.,* 90 Ill.App.3d 547, 45 Ill.Dec. 765, 768, 413 N.E.2d 98, 101 (1980), and the latter requires a reasonable expectation of entering into a valid business relationship, *Fellhauer,* 154 Ill. Dec. at 657, 568 N.E.2d at 878. The claim for interference with prospective economic advantage, however, may be asserted in an employment at-will situation. *Id.,* 154 Ill. Dec. at 656–57, 568 N.E.2d at 877–78.

■ The heading of the count is not important. Otterbacher may therefore survive the motion to dismiss if he alleges: (1) the existence of a contract or a reasonable expectation of a continued business relationship; (2) Garner's knowledge of the contract or expectancy; (3) Garner purposefully induced a breach of the contract or prevented the legitimate expectancy from ripening; and (4) damages resulted from the interference. *Id.,* 154 Ill.Dec. at 657, 568 N.E.2d at 878; *Belden,* 45 Ill.Dec. at 768, 413 N.E.2d at 101. These torts, however, usually lie against third-parties who cause the employer/em-

---

**2.** Because jurisdiction over the remaining counts is based on the court's supplemental jurisdiction under 28 U.S.C. § 1367, the court must look to Illinois's substantive law to resolve the remaining issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ployee relationship to terminate and not against the employer or agent who terminates the employee. *Diamond v. Chulay,* 811 F.Supp. 1321, 1334 (N.D.Ill.1993); *see also Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1331 (7th Cir.1983) (liability only premised on acts immediately directed at a third party other than a plaintiff).

■ Defendants therefore argue that Garner did not interfere with Otterbacher's contractual relationship because the complaint does not allege Garner directed actions toward a third party but instead alleges the actions were directed toward Otterbacher. The court agrees. The complaint alleges Garner was a totalitarian supervisor giving Otterbacher unrealistic or unreasonable demands on the job. Those allegations do not state a claim for tortuous interference with contract or business expectancy.

■ Otterbacher does allege, inferentially, that Garner directed false information to the Associate Vice President regarding Otterbacher's absence from Northwestern's payroll. It is true that liability may attach if a supervisor acts solely for his or her own personal interest, and totally unrelated to or antagonistic to the interest of the employer, in order to effectuate a wrongful termination of a subordinate. *See, e.g., Diamond,* 811 F.Supp. at 1334; *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 25, 545 N.E.2d 672, 678 (1989). But Otterbacher's allegations do not demonstrate that the discharge was the result of false information. The complaint does not allege that the Associate Vice President was the actual decisionmaker in firing Otterbacher or that he relied upon false charges or false information presented by Garner. At best, Northwestern learned of the likely "wrongful" nature of Otterbacher's discontinuation of employment after his employment was terminated by Garner. Nothing in the complaint suggests that Garner misused her powers of office to cause Northwestern to end its relationship (contractual or otherwise) with Otterbacher other than by making the termination decision herself. Also, Otterbacher does not allege that the termination

was a breach of his contract with Northwestern.

Furthermore, any contention that Northwestern would have taken steps to investigate the situation and analyze whether Garner's decision was appropriate is mere speculation and is not supported by factual allegations. Otterbacher does not allege Garner was required by contract to present her decision to Northwestern nor does he allege Northwestern had a duty to investigate into the termination decisions Garner makes. Last, Otterbacher concedes that he cannot state a claim against Northwestern for intentional interference with contractual relationship. Count III is therefore dismissed in its entirety.

### III. *Intentional Infliction of Emotional Distress.*

■ To state a claim under Illinois law for intentional infliction of emotional distress, Otterbacher must plead that defendants engaged in extreme and outrageous conduct, either intending to inflict severe emotional distress or knowing that the conduct creates a strong probability of severe emotional distress, and thus caused Otterbacher to suffer severe emotional distress. *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). Because federal courts simply require "notice pleading," *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), this court construes pleadings liberally. *See Powell Duffryn Terminals, Inc. v. CJR Processing, Inc.,* 808 F.Supp. 652, 654 & n. 1, 655–56 (N.D.Ill. 1992). Thus, the mere vagueness or lack of detail of the allegations is not sufficient to justify a dismissal. *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). A party fails to state a claim upon which relief may be granted only if that party can prove no set of facts upon which to grant legal relief. *Ross v. Creighton Univ.,* 957 F.2d 410, 413 (7th Cir.1992).

■ Otterbacher alleges that Garner, intending to cause emotional distress, harassed Otterbacher and placed numerous phone calls to his residence which contained vulgar

and threatening messages, including a threat to Otterbacher's life. These actions allegedly caused Otterbacher to suffer emotional distress and humiliation. The actions of Garner and the assertions made over the phone may have been outrageous to a reasonable person. Without knowing the specific actions taken or the content of the phone statements, the court is left with the possibility that the conduct was outrageous and on this basis will allow the allegations to stand until further discovery. *Talley v. Leo J. Shapiro & Assoc., Inc.*, 713 F.Supp. 254, 260 (N.D.Ill.1989). Similarly, whether Otterbacher suffered severe emotional distress cannot be determined on the pleadings. The court cannot say that Otterbacher can prove no set of facts upon which to grant legal relief.

■ As to Northwestern, Otterbacher may recover under the theory of *respondeat superior* if Garner committed the intentional tort within the scope of her employment. *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 151 Ill.Dec. 560, 565, 564 N.E.2d 1222, 1227 (1990) (citing *Sunseri v. Puccia*, 97 Ill.App.3d 488, 52 Ill.Dec. 716, 422 N.E.2d 925 (1981)). Although the complaint does not allege that the phone calls were made within the scope of Garner's employment with Northwestern, Garner's alleged conduct on the job as well as the telephone harassment during and after Otterbacher's employment can hardly be separated at the pleading stage. While Otterbacher's theory that Northwestern was aware of the harassment and did not investigate or take any action and thus "exacerbated the situation by condoning their agent's activities and prolonged their agent's activities . . ." cannot establish liability, the court cannot state that the complaint is so lacking that no set of facts could be established which would entitle Otterbacher to relief. *See, e.g., Johnson v. Federal Reserve Bank*, 199 Ill.App.3d 427, 145 Ill.Dec. 558, 560–61, 557 N.E.2d 328, 330–31 (superiors, acting in capacity as supervisors, engaged in pattern of abusive conduct for almost two years, raising inference that employer knew of and condoned infliction of severe emotional distress), *appeal denied*, 133 Ill.2d 558, 149 Ill.Dec. 323, 561 N.E.2d 693 (1990). While this case may be distinguishable from *Johnson*, in that the harassment continued beyond Otterbacher's employment, the court is reluctant to dismiss this claim until further factual development.

■ As for the harassment on the job, defendants additionally raise the exclusive remedy provision of the Illinois Workers' Compensation Act ("Workers' Comp. Act"), 820 ILCS 305/1 *et seq.* as a ground for dismissal of count IV. The Workers' Comp. Act precludes a covered employee from asserting common law claims against an employer or its agents for injuries sustained on the job. 820 ILCS 305/5(a). Otterbacher can avoid the exclusive remedy provision, however, if he establishes that (1) the injury was not accidental, (2) the injury did not arise from the employment, (3) the injury was not received during the course of employment, or (4) the injury is not compensable under the Workers' Comp. Act. *Meerbrey*, 151 Ill.Dec. at 564, 564 N.E.2d at 1226.

Otterbacher cannot satisfy the second or fourth requirement because the injury can be said to arise from the employment, in that it was derived from his employment relationship, and because intentional infliction of emotional distress is generally compensable under the Workers' Comp. Act. *Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 41 Ill. Dec. 776, 780, 408 N.E.2d 198, 202 (1980). The first and third elements, however, are at issue.

■ Intentional injuries inflicted on an employee by a co-employee are accidental within the meaning of the Workers' Comp. Act because the injuries are unexpected and unforeseeable from the injured employee's point of view as well as from the employer's point of view. *Meerbrey*, 151 Ill.Dec. at 564, 564 N.E.2d at 1226. But this is true only as long as the employer did not intentionally inflict the injury upon the employee or did not command or expressly authorize the injury, *id.*, or as long as the co-employee was not acting as the alter ego of the employer, *Johnson*, 145 Ill.Dec. at 562, 557 N.E.2d at 332. Moreover, the Workers' Comp. Act does not bar employees from suing co-employees for injuries arising from the co-employee's intentional torts. *Meerbrey*, 151 Ill. Dec. at 568, 564 N.E.2d at 1230. Thus, while

the Workers' Comp. Act would normally bar Otterbacher's claim for intentional infliction of emotional distress against Northwestern (insofar as the allegations under the doctrine of *respondeat superior* relate to the alleged outrageous job harassment) Otterbacher's claims are not barred in the present case because Garner, when directing Otterbacher's job duties in her capacity as supervisor, may have acted as an alter ego of Northwestern. *See Johnson,* 145 Ill.Dec. at 562, 557 N.E.2d at 332 (manager was alter ego of bank).

Further, as to the allegations which extend beyond the term of Otterbacher's employment, the court cannot separate these claims from the course of conduct Garner began as Otterbacher's superior absent the benefit of specific facts adduced during discovery. The court cannot hold, at the pleading stage, that these injuries were received during the course of Otterbacher's employment which would fall outside the third exception identified in *Meerbrey,* 151 Ill.Dec. at 564, 564 N.E.2d at 1226 and thus bar the common-law claims. *See Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 324 (7th Cir.1992) (subordinate's emotional distress arose from employment).

IV. *Right to Privacy.*

Last, Otterbacher's complaint purports to state a claim for the privacy tort of intrusion into seclusion. Defendants assert that the complaint fails to state a claim because Illinois does not recognize this variety of the privacy tort and because the allegations do not rise to a privacy violation.

The court analyzes the complaint against the backdrop of Illinois's substantive law. *Ross v. Creighton,* 957 F.2d at 413. Thus, in determining whether Illinois recognizes the tort of intrusion into the seclusion of another, the court must attempt to predict how the Illinois Supreme Court would decide the issue. *Id.* When the issue has not yet been considered by that court, this court also looks to decisions by Illinois appellate courts and other states' courts in order to formulate a decision. *Id.* (citing *Brooks v. Chicago Downs Ass'n,* 791 F.2d 512, 514 (7th Cir. 1986)).

Illinois has yet to specifically recognize this variety of privacy tort. *Lovgren v. Citizens First Nat'l Bank,* 126 Ill.2d 411, 128 Ill.Dec. 542, 544, 534 N.E.2d 987, 989 (1989); *see Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1178 (7th Cir.1993). The Illinois Supreme Court has, however, cautiously recognized a general right to privacy, *Leopold v. Levin,* 45 Ill.2d 434, 259 N.E.2d 250 (1970), and has thus recognized privacy torts, including, for instance, the false light privacy tort, *Lovgren,* 128 Ill.Dec. at 547, 534 N.E.2d at 992. A number of the Illinois appellate districts have recognized the seclusion privacy tort, although the tally is far from unanimous. *See Lovgren,* 128 Ill.Dec. at 544, 534 N.E.2d at 989 (noting the split between the appellate districts). Nonetheless, other states have recognized the intrusion tort and its application where unwanted and repeated telephone calls form the basis for imposition of liability. *Harms v. Miami Daily News, Inc.,* 127 So.2d 715, 716–17 (Fla. App.1961); W. PROSSER & W. KEETON, TORTS § 117, at 854–55 (5th ed. 1984); *see also Thomas v. Pearl,* 998 F.2d 447, 452 (7th Cir.1993) (noting application of intrusion tort to unwanted and repeated telephone calls); *Lovgren,* 128 Ill.Dec. at 544, 534 N.E.2d at 989 (same).

Without deciding whether it is likely that the Illinois Supreme Court would recognize a cause of action for intrusion into the seclusion, the court finds that there may exist a set of facts demonstrating a severe intrusion into the seclusion of Otterbacher such that the Illinois courts would recognize a cause of action. The court will again await the development of the operative facts forming the core of this case before proceeding with the question.

## CONCLUSION

For the reasons stated above, the court dismisses count III. The court denies the remainder of the motion to dismiss.

IT IS SO ORDERED.