**Arthur P. DIAMOND, Plaintiff,**

**v.**

**Frank J. CHULAY, as Mayor of the Village of Lincolnwood and Individually; and the Village of Lincolnwood, Defendants.**

**No. 90 C 580.**

United States District Court, N.D. Illinois, E.D.

Jan. 26, 1993.

Alan I. Greene, Joan Myers Eagle, Schwartz & Freeman, Chicago, IL, plaintiff.

Ronald S. Cope, Alan Mullins, Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for defendants.

## ORDER

NORGLE, District Judge.

Before the court are the parties' cross-motions for summary judgment. For reasons detailed below, the court grants the defendants' motion and denies the plaintiff's motion.

## FACTS

Plaintiff Arthur P. Diamond ("Diamond"), former Superintendent of Public Works and Acting Director of Public Works for the Village of Lincolnwood ("Lincolnwood"), brought suit against Lincolnwood and its mayor, Frank J. Chulay ("Chulay"), alleging six claims. Because Counts III and IV were dismissed, the present summary judgment motions only address Counts I, II, V, and VI of Diamond's amended complaint. Count I alleges an action under 42 U.S.C. § 1983 against Lincolnwood and Chulay in both his official capacity as mayor and individual capacity (where appropriate, the court will refer collectively to the "defendants"), declaring that defendants terminated Diamond in violation of his rights under the First and Fourteenth Amendments because the firing was politically motivated. Diamond alleges that he was fired in retaliation for telling Chulay that he would not support Chulay in his reelection bid and for remaining nonpartisan in the election. Count II alleges a violation of 42 U.S.C. § 1983 as well. Diamond alleges he was fired from public employment for speaking on matters of public concern in violation of his rights under the First and Fourteenth Amendments. Count V raises a state law claim for intentional interference with prospective economic advantage, claiming Chulay purposely, willfully, intentionally, maliciously, and unjustifiably interfered with Diamond's legitimate expectation of continued employment

with Lincolnwood. Last, Count VI is a suit to recover overtime wages and benefits allegedly due and owing.

The facts supporting the allegations are as follows.[1] Chulay was elected mayor of Lincolnwood in April of 1985. Chulay appointed Diamond Superintendent of Public Works for Lincolnwood in August 1986, and then appointed him Acting Director of Public Works, accompanied by a salary increase, in January 1987 when the previous Director of Public Works retired. Diamond assumed the position of Acting Director of Public Works and performed many of the duties accompanying the position of Director of Public Works. He thus performed in a dual role as Superintendent/Director of Public Works for two years and three months. Chulay was reelected in April of 1989 in a close race. Chulay discharged Diamond from employment as Superintendent and Acting Director of Public Works in April 1989 soon after his reelection.

During Chulay's reelection bid in 1989, Diamond remained nonpartisan and publicly supported neither candidate. Diamond claims that Chulay approached him at one time and sought Diamond's support for Chulay's reelection, at which time Diamond claims he told Chulay that he would support the position of mayor, but would not endorse any particular candidate. Furthermore, during his tenure as Superintendent/Director of Public Works, Diamond made various comments regarding the manner in which projects were handled under Chulay's administration. He commented on matters relating to the inefficiency with which certain projects were being handled and also questioned whether some projects were satisfying certain local and state environmental requirements. Chulay considered the projects important to Lincolnwood, and even highlighted these projects during his reelection bid.

The evidence is controverted whether Diamond's performance was ever criticized or whether Diamond was ever reprimanded,

disciplined, or warned while employed with Lincolnwood. Diamond has acknowledged problems within the Public Works Department he headed. The sole reason given for Diamond's termination at the time was "poor snow removal," yet Diamond claims Chulay has now advanced "new-found" reasons to justify the termination. All this, Diamond asserts, demonstrates that the termination was either political or based on Diamond's comments concerning the various Lincolnwood projects. Furthermore, Diamond claims that this evidence demonstrates that Chulay's self-interests motivated him to interfere with Diamond's employment. In September 1992, Diamond and the defendants each filed cross-motions for summary judgment.

## DISCUSSION

 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). All reasonable inferences are drawn in favor of the party opposing the motion. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992). Nevertheless, a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, a disputed fact is material, and thus would properly preclude summary judgment, only if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992).

---

1. These facts are drawn from the statements of material facts each party submitted in accordance with local rules 12(m) and 12(n), as well as the other supporting material submitted, and are undisputed unless otherwise noted.

■ As to Diamond's § 1983 claims, Lincolnwood, and Chulay in his official capacity, claim there is no evidence of a policy or custom such as to impose liability. Furthermore, the defendants collectively claim Diamond's position is exempt from the prohibition against patronage terminations and therefore there can be no liability under § 1983 whatsoever. Also in regard to § 1983, the defendants assert that Diamond's speech is unprotected or, alternatively, that there is no evidence that the termination was motivated by Diamond's speech. Additionally, Chulay claims he is not liable in his individual capacity because he possesses qualified immunity from any liability.[2] On the other claims, Chulay asserts that he possesses a qualified privilege under Illinois law to fire Diamond and that Diamond has not demonstrated that Chulay was motivated by malice to support his claim for interference with prospective economic interest. Last, defendants assert that Diamond was exempt from the Federal Labor Standards Act's overtime requirements and that Lincolnwood did not have any policy for employees of Diamond's position in regard to the other claimed benefits. The court will address each issue in turn.

### I. Municipal Liability and Liability of Chulay in Official Capacity under § 1983:

As to Counts I and II, Lincolnwood and Chulay in his official capacity as mayor argue that Diamond failed to present sufficient evidence of an official policy or custom sanctioning or directing any alleged unconstitutional acts, and thus they cannot be liable under § 1983. The court finds that summary judgment in favor of Lincolnwood and Chulay in his official capacity is not warranted on this ground.

■ Municipalities and their officials are amenable to suit under § 1983 for monetary, declarative, and injunctive relief. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035

n. 55, 56 L.Ed.2d 611 (1978). For an action against an official in his official capacity, and thus against the entity of which the official is the agent, the plaintiff must demonstrate that the entity's policy or custom played a part in the violation of federal law. *Hafer v. Melo*, —— U.S. ——, —— – ——, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) (citing *Monell*, 436 U.S. at 690 n. 55, 694, 98 S.Ct. at 2035 n. 55, 2037)). Although the existence of a single incident of unconstitutional conduct will not normally suffice to establish policy or custom, *see Hossman v. Blunk*, 784 F.2d 793, 796–97 (7th Cir.1986); *Strauss v. City of Chicago*, 760 F.2d 765, 767, 769 (7th Cir.1985), a city's policy can be established if the decisionmaker who possessed final authority over the firing decision, and who authorized the termination of the public employee, is a city policymaker. *Matlock v. Barnes*, 932 F.2d 658, 666 n. 4 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991); *see also Fiorenzo v. Nolan*, 965 F.2d 348, 350–51 (7th Cir. 1992) (liability in official capacity is permitted if one with final policymaking authority officially ordered, sanctioned, or approved decision).

■ Diamond has produced evidence that Lincolnwood delegated to Chulay control over the hiring and firing of his officers, including the Superintendent of Public Works and Director of Public Works. Chulay possessed the authority, and made the decision, with the only proviso that he inform the Village Trustees of the reasons for a decision to discharge an employee. Because Chulay is the official possessing final authority over the discharge decision, that he terminated Diamond is sufficient to establish policy or custom. As a result, Chulay's decision to terminate Diamond for political reasons was "officially adopted and promulgated by [Lincolnwood's] officers." *See Monell*, 436 U.S. at 690, 98 S.Ct. at 2036; *see also Pembaur v. Cincin-*

---

**2.** Qualified immunity applies only to individual capacity suits. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d

114 (1985); *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1502 (11th Cir.1990).

*nati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (municipal officials possessing final policymaking authority may, by a single decision, subject the government to liability under § 1983). Diamond could thus recover against Chulay in his official capacity and against Lincolnwood if Diamond's termination constitutes a constitutional violation.

II. *Political Discharge under § 1983 (Count I):*

■ As to Count I, the court finds that summary judgment in favor of Lincolnwood and Chulay (in both official and individual capacities) is appropriate because Diamond's position is exempt from the prohibition against politically motivated terminations, thus preventing liability for such a termination. Further, even if the position was not an exempt position, summary judgment in favor of Chulay individually is still appropriate because of Chulay's qualified immunity for this discretionary act.

■ Generally, public employees cannot be terminated or otherwise subjected to adverse employment decisions solely for political reasons. *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Meeks v. Grimes,* 779 F.2d 417, 418–19 (7th Cir.1985). A refusal to campaign for an employer constitutes a political reason and could conceivably be an improper ground for termination. *See Dimmig v. Wahl,* 983 F.2d 86, 87 (7th Cir.1993). In the present case, the evidence (though contradicted) suggests that Diamond's termination was politically motivated, and comprises enough to survive Lincolnwood's and Chulay's motion for summary judgment and go to trial on that issue. Diamond charges that, sometime around March of 1989—during Chulay's reelection bid—Chulay spoke with Diamond about whether Diamond would support him in the campaign. Diamond answered that he would support the position of mayor, but that he was not going to endorse any particular candidate. Also at that time, Diamond asserts Chulay accused him of passing information to the other political party; an accusation which Diamond de-

nied. There is evidence that Chulay stated he "wanted someone loyal to him" and that Diamond "seemed more loyal to [Chulay's] opposition...." More importantly, there is evidence that Chulay admitted that Diamond's dismissal was "political." Further, there exists a close temporal proximity between Chulay's unsuccessful request in March of 1989 for Diamond's support during Chulay's reelection, the April 4th election, and the April 10th termination of Diamond's employment.

■ Although the evidence Diamond presents in support of his motion and in opposition to Chulay's motion indicates Chulay fired him for political reasons, some public service positions are exempt from the prohibition against patronage terminations. *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294. In other words, some positions lend themselves to termination for political reasons and, thus, provide no protection from a termination based on one's lack of patronage. "An elected official must have the loyalty of his policymaking assistants in order to operate the government efficiently, as well as to attempt to carry out the policies upon which he or she was elected." *Meeks,* 779 F.2d at 422. Political loyalty is particularly relevant if the employee either creates or implements policy and if he or she has broad responsibilities with ill-defined objectives. *Id.* (citing *Tomczak v. City of Chicago,* 765 F.2d 633, 642 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985)).

■ On this issue, it becomes defendant's burden to demonstrate that political loyalty, or patronage, is an appropriate requirement for the effective performance of Diamond's job as Superintendent of Public Works and Acting Director of Public Works. *Tomczak v. City of Chicago,* 765 F.2d 633, 640 (7th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). To show this, Chulay must present evidence of, and the court must look to, the job description for Diamond's position, as well as the duties and responsibilities involved with the position. The analysis then becomes twofold. The court first looks at the type of decisions the positions of Super-

intendent of Public Works and Acting Director of Public Works authorized Diamond to make, either directly or indirectly. *Id.* at 641. Second, the court determines whether there was room for principled disagreement in any of those areas in which Diamond possessed significant decision-making authority. *Id.* at 640–41.

Chulay has met this burden and has demonstrated that the positions of Superintendent of Public Works and Acting Director of Public Works contain significant decisionmaking authority in areas involving room for principled disagreement. Initially, to create a factual issue, Diamond asserts that, as Superintendent of Public Works and while working as Acting Director of Public Works for two years and three months, he was not responsible for all aspects of the Public Works department as the Director would normally be. He downplays his own particular duties. He further asserts that Lincolnwood did not have a Director of Public Works between January 1987, the date he was appointed Acting Director, and April 1989, the date he was discharged. He claims he had no official job description and that Chulay severely circumscribed his duties and responsibilities. He thus disputes that he had the authority to fulfill the full responsibilities of the Director of Public Works position. It follows, Diamond argues, that the court should not examine the Director of Public Works position in analyzing whether the position contains significant decisionmaking authority in areas involving room for principled disagreement. Instead, Diamond argues, the court should analyze the precise duties Diamond assumed when he was given the additional duties of, or promoted to the position of, "Acting Director of Public Works."

 But this argument misses the point. The court need not concern itself with what past or present administrations have done with the office. The court must examine the powers *inherent* in Diamond's office, as opposed to the functions which Diamond actually performed when working in that capacity. *Upton v. Thompson,* 930 F.2d 1209, 1212 (7th Cir.1991), *cert. de-* *nied,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992); *Tomczak,* 765 F.2d at 640. "Thus, if an officeholder performs fewer or less important functions than usually attend his position, he may still be exempt from the prohibition against political terminations if his position inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance." *Tomczak,* 765 F.2d at 641. Consequently, the battle in which Diamond and Chulay engage regarding Diamond's actual job duties is picayune. The court will therefore address the responsibilities inherent in both the Superintendent of Public Works and Director of Public Works positions.

The Public Works Department for Lincolnwood is generally responsible for water distribution, sewers, streets, alleys, snow removal, and the grounds and equipment for twelve parks. The Public Works Department is made up of one Director, a Superintendent, and six foremen, as well as thirty-five to forty-five other employees with unspecified job titles. The Director of Public Works is responsible for establishing policies and practices for the Public Works Department and develops the department's goals and objectives including long-term plans for achieving those goals. The Director of Public Works hires, promotes, and fires department personnel. This position authorizes the occupant to schedule, coordinate, and manage subordinates and resources. The Director of Public Works is responsible for personnel assignments, training, disciplinary action, and dealing with grievances. The Director is also involved in preparation of the budget for the Public Works Department. The job also contains broad responsibilities and objectives such as promoting and maintaining professional working relationships with various governmental agencies and public sector organizations and promoting and maintaining effective relations with the community.

The Superintendent of Public Works position provides direct assistance to the Director of Public Works and implements the Department's policies. This position authorizes the occupant to assist in the schedul-

ing, coordination, and management of subordinates and resources. The Superintendent of Public Works and Director of Public Works both possess the responsibility for administration of the Public Works operations and have oversight of a work force of approximately thirty-five to forty-five employees. The mayor appoints both positions with the advice and consent of the Village Trustees, although the Village Trustees have apparently delegated the sole authority to hire and fire to the mayor.

Diamond was appointed the position of Acting Director of Public works and worked, at all times relevant to this lawsuit, in a capacity that combined the duties of the Superintendent of Public Works and the Director of Public Works. Diamond reported directly to two of Chulay's administrative assistants during his job as Superintendent of Public Works as well as when he was Acting Director of Public Works. He further presented all information concerning utilities directly to Lincolnwood's consulting engineer. While employed in this dual capacity as Superintendent/Acting Director of Public works, Diamond himself dealt with local, state, and federal agencies, including the Illinois Environmental Protection Agency and the City of Chicago, on behalf of Lincolnwood. Diamond was further responsible for directing Lincolnwood's snow and ice removal services as Superintendent of Public Works. Diamond had input into the approach and procedures for establishing a water distribution system during the construction of the Lincolnwood Towncenter Mall, which was a major concern of Lincolnwood residents and a major issue in Chulay's reelection.

Diamond's positions are virtually identical to the plaintiff's position in *Tomczak*. The plaintiff in that case held the second highest job in the Chicago Water Department. *Id.* at 641–42. In the present case, the Superintendent of Public Works position is second in command to the Director of Public Works, although Diamond actually worked in a capacity which combined the two positions. And in *Tomczak*, like the present case, the plaintiff had input in the decisions that were made, although ultimate decisionmaking was not vested in his

position. *Id.* at 642. The Seventh Circuit determined that the plaintiff's position in *Tomczak* possessed significant decisionmaking authority. *Id.* Accordingly, the Superintendent of Public Works, the Director of Public Works, and the dual position of Superintendent/Acting Director of Public Works of Lincolnwood inherently possess significant decisionmaking authority directly and indirectly.

As to whether there exists room for principled disagreement in any of these areas, *Tomczak* demonstrates that the function of Lincolnwood's Public Works Department in providing vital services may be important to incumbent officials and may even affect election bids. Among the chief functions of a local government is the provision of quasi-utility services such as water and sewage. *Id.* at 641. The Seventh Circuit held that there is room to disagree during the development and implementation of plans to achieve the various goals with which the Chicago Water Department concerns itself. *Id.* Likewise, both the Superintendent of Public Works and the Director of Public works hold positions which affect and influence similar goals concerning the provision of water and sewage services about which there could be principled disagreements. *See also Shakman v. Democratic Organization of Cook County*, 722 F.2d 1307 (7th Cir.) (second in command position of Park Superintendent of Employment exempt), *cert. denied*, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983). And snow removal has been an issue of particular concern during past elections in the Chicago area. Thus, these positions allow meaningful input into the policies and goals of the Public Works Department and may potentially seriously thwart the incumbent administration's goals by hostility or foot-dragging. *See Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 246 (1st Cir. 1986).

Accordingly, the defendants could appropriately require political affiliation for the effective performance of the job Diamond occupied in his capacity as both Superintendent of Public Works and as Acting Director of Public Works and could terminate

Diamond for political reasons with impunity.

Notwithstanding the above discussion, even if the defendants did not demonstrate that Diamond's position was exempt, summary judgment is appropriate for Chulay individually because Chulay possesses qualified immunity for this termination decision. Qualified immunity shields government officials from liability for civil damages when they perform discretionary functions, unless their acts violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that [the act in which he is engaging] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, liability attaches if the unlawfulness of the official's act is objectively apparent given the pre-existing law at the time of the act. *Id.; Pounds v. Griepenstroh*, 970 F.2d 338, 340 (7th Cir.1992).

Although Diamond is correct that this rule does not require him to produce a prior case that is "precisely on all fours on the facts and law" with the present case to demonstrate that he possessed a clearly established constitutional right to be free from an adverse employment action motivated by political considerations, *see McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992) (quoting *Landstrom v. Illinois Dep't of Children & Family Servs.*, 892 F.2d 670, 676 (7th cir.1990)), Diamond must show that the right was "sufficiently particularized" in regard to the precise facts facing Chulay, *id.* In other words, was the law as to a political discharge of a person in Diamond's position apparent "in relation to the specific facts confronting [Chulay] when he acted"? *Id.* (quoting *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate

the law.'" *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038 (quoting *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)).

Qualified immunity is appropriate here because the position that Diamond held is not clearly established as one requiring protection from a termination based on political reasons. Diamond has not pointed to any case that addresses the facts of this case either directly or analogously. Diamond points to *Meeks, Elrod v. Burns*, and *Branti* to support his position that Diamond did not occupy a policymaking position, and thus Chulay could not have reasonably believed the termination was constitutionally permissible. Nevertheless, those cases are not on point. The *Meeks* court determined that court bailiffs could not be discharged for political reasons, *see Meeks*, 779 F.2d at 420–21, and *Elrod* dealt with the Chief Deputy of the Process Division of the Cook County Sheriff's Office, a bailiff and security guard at the Juvenile Court of Cook County, and a process server—all non-civil-service personnel, *see Elrod v. Burns*, 427 U.S. 347, 350–51, 96 S.Ct. 2673, 2678, 49 L.Ed.2d 547 (1976). Also, *Branti* involved Assistant Public Defenders. *Branti*, 445 U.S. at 518–20, 100 S.Ct. at 1294–94.

On the contrary, this case is closely analogous to *Tomczak*, as discussed above. The Seventh Circuit decided that the second-highest official in the Chicago Water Department could be terminated for political reasons. *Tomczak*, 765 F.2d at 641; *see also Dimmig*, 983 F.2d at 87 (Probationary Sheriff's Deputy); *Upton*, 930 F.2d at 1218 (deputy sheriffs). Because Diamond's position is relatively high, and extremely analogous to (if not directly on point with) the official in *Tomczak*, and further because there is no case holding that a Superintendent of Public Works or Director of Public Works is not exempt from the prohibition against patronage dismissals, the qualified immunity shield here is virtually impenetrable. *See Pounds*, 970 F.2d at 341 ("A plaintiff has little chance of winning a case of first impression unless [he or] she occupies an extremely ... low

rung on the bureaucratic ladder"); *see also Rutan v. Republican Party of Illinois*, 497 U.S. 62, 111, 110 S.Ct. 2729, 2756, 111 L.Ed.2d 52 (1990) ("for most positions it is impossible to know whether party affiliation is a permissible requirement until a court renders its decision") (Scalia, J., dissenting). Due to the varying responsibilities of public employees in the "myriad of governmental bodies, departments, and positions," the court cannot hold that Diamond possessed a clearly established right to be free from patronage dismissal without case support for his position. *Pounds*, 970 F.2d at 341. "Faced with such uncertainty, it may be preferable to err on the side of caution and ... find qualified immunity where [the court] cannot confidently state that the right was clearly established or that the officials must have known their acts were proscribed by law." *Id.* at 342. Accordingly, political allegiance reasonably appeared to be a legitimate job requirement, even though Chulay may have severely limited the responsibilities or functions of the position during Diamond's tenure, such that Chulay could have reasonably believed that his acts were constitutionally permissible.

In sum, summary judgment in favor of defendants and against Diamond on Count I is appropriate because the positions of Superintendent of Public Works and Director of Public Works are both exempt from the prohibition against patronage terminations. Additionally, Chulay's qualified immunity protects him individually from liability in regard to the particular firing decision of this case.

III. *Liability Under § 1983 for Allegedly Terminating Diamond for Speaking on Matters of Public Concern (Count II):*

As to Count II, the court finds summary judgment is proper in favor of defendants as well. The court finds that Diamond's speech does not possess First Amendment protection in this case. Assuming that the matters about which Diamond spoke are matters of public concern, the court finds that the First Amendment interests of Diamond, as a citizen, in commenting upon matters of public concern are outweighed by the interests of Lincolnwood and Chulay in promoting the efficiency of the public services provided through the Public Works Department. Furthermore, there exists no connection between Diamond's termination and Diamond's statements.

To find liability, the court must find first that Diamond's speech is constitutionally protected, second that the defendants' actions were motivated by Diamond's exercise of free speech, and third, that the defendants would not have taken the same action in the absence of Diamond's exercise of his free speech rights. *Vukadinovich v. Bartels*, 853 F.2d 1387, 1389–90 (7th Cir.1988). To determine whether the speech is constitutionally protected, the court must first evaluate whether the speech dealt with matters of public concern, *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983), and then balance the interests of Diamond, as a citizen, in commenting upon matters of public concern with the interests of the defendants in running an efficient department, *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). *See Hesse v. Board of Educ.*, 848 F.2d 748, 751–52 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1128, 103 L.Ed.2d 190 (1989).

Diamond made some comments regarding the way projects were handled under Chulay's administration. Diamond criticized improprieties involving the Bryn Mawr Country Club, townhouse water meters, and Towncenter Mall. Specifically, Diamond spoke about the city's needs to acquire a consultant to analyze Lincolnwood's "old, decaying, inadequate, and possibly hazardous water distribution system;" to identify and correct the cause of some flooding; to require a private contractor to pay for repairs to "improperly-installed water meters on private property ... rather than forcing the taxpayers of Lincolnwood to absorb the cost"; to assure that the water distribution system on the towncenter property comported with the Illinois Environmental Protection Agency and local

requirements; and to assure that Lincolnwood would not assume responsibility for water mains on private property without proper protection, authorization, and indemnification.

Nevertheless, the court does not believe that Diamond's speech possesses First Amendment protection in this context. As Chulay points out, Lincolnwood's interest in providing the efficient operation of its Public Works Department by requiring some level of patronage outweighs Diamond's interest in making these statements to others involved in the same projects. *See Breuer v. Hart*, 909 F.2d 1035, 1037 (7th Cir.1990) (right to free speech is balanced against interest in running efficient Department). Diamond directed his statements to Lincolnwood employees or officials, the Towncenter developers, and Lincolnwood's consulting engineers. The defendants could appropriately feel that Diamond had a duty to assist in the project's completion without frustrating its progress, regardless of his apparent disagreement with certain aspects of the project. Chulay wanted to make his administration accessible to the residents, and to provide more personalized services by satisfying residents' complaints. He favored a regional mall in order to bring more business into Lincolnwood and in fact actually cast the deciding vote in favor of the development of the mall. Diamond's actions were arguably perceived as threatening or hampering the progress or development of the mall. Therefore, defendants properly justified Diamond's discharge by pointing to the important need for loyalty and confidence which defendants have demonstrated is required for Diamond's position as Superintendent of Public Works and Acting Director of Public Works. *See id.* at 1040 (special emphasis is placed on need to encourage close and personal relationship between employee and superiors).

 Moreover, there exists no connection between Diamond's memos and letters on these issues and his discharge. The statements regarding the water distribution system were made twenty-five months prior to Diamond's discharge; the state-ments regarding the Bryn Mawr Country Club storm sewer line were made twenty months prior to Diamond's discharge; the statements regarding the townhouse water meters were made about one year prior to the discharge; and the correspondence regarding the water main at the Towncenter mall began eight months before he was fired. The time between the statements and the firing decision is far too attenuated. Diamond has not produced any evidence that these statements were connected in any way to the firing decision, and Chulay denies these statements played any role in the decision to fire Diamond. Also, Diamond's comments did not directly implicate Chulay in any wrongdoing himself, only that some projects were being accomplished inefficiently. Therefore, there exists no evidence from which to infer that Chulay was motivated to terminate Diamond because he spoke on these matters, as is required to establish liability. *See Vukadinovich*, 853 F.2d at 1389–90.

In sum, summary judgment in favor of defendants is proper on Count II. Diamond's speech does not possess First Amendment protection in this case. The interests of Diamond as a citizen in commenting upon matters of public concern are outweighed by the interests of Lincolnwood and Chulay. Furthermore, there exists no connection between Diamond's termination and Diamond's statements.

IV. *Interference With Prospective Economic Interest (Count V):*

The court next finds that Chulay is entitled to summary judgment on Count V. The termination decision was justified and not contrary to the interests of Lincolnwood.

 Chulay possesses a qualified privileged under the Illinois Municipal Code to discharge any person he has appointed. ILL.REV.STAT. ch. 24, ¶¶ 3–12–2 and 3–11–1. Therefore, to recover for an interference with prospective economic advantage, Diamond must demonstrate that (1) he possesses a reasonable expectancy of continuing his business relationship with Lincolnwood, (2) Chulay knew of the expectancy,

(3) Chulay purposely and unjustifiably (or maliciously) interfered with and defeated this legitimate expectancy, and (4) the interference caused harm to Diamond. *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 25, 545 N.E.2d 672, 678 (1989). Illinois law recognizes that an at-will employee may possess a legitimate expectation of future economic advantage if he or she can establish that there existed a presumption that his or her employment would continue indefinitely. *Fellhauer*, 154 Ill. Dec. at 657, 568 N.E.2d at 878. There exists enough evidence, though contradicted, to allow a jury to determine whether Diamond legitimately presumed his employment would continue indefinitely. And Chulay was certainly aware of Diamond's relationship with Lincolnwood.

On the third requirement, however, that Chulay purposely and unjustifiably interfered with Diamond's legitimate expectancy, the court finds that the termination was justified. The tort of interference usually lies against third-parties who cause an employer/employee relationship to terminate. *See Belden Corp. v. InterNorth, Inc.*, 90 Ill.App.3d 547, 45 Ill.Dec. 765, 413 N.E.2d 98 (1980) (discharge was result of intentional and unjustified action of another); *see also Fellhauer*, 154 Ill. Dec. at 657–58, 568 N.E.2d at 878–79 (one who induces another to breach his contract with a third party will be liable). Nonetheless, a municipal officer can conceivably be held liable for intentionally misusing his or her powers of office to cause a discharge. *See Fellhauer*, 154 Ill.Dec. at 658–59, 568 N.E.2d at 878–79 (noting that plaintiff failed to support allegation that mayor caused set of false charges to be filed with city council). Therefore, the court will find Diamond's termination unjustified only if Chulay acted for his own personal interests and totally unrelated to, or even antagonistic to, the interest which gave rise to his privilege. *HPI Health Care*, 545 N.E.2d at 678.

Diamond fails on this standard. Diamond claims Chulay's motives were entirely political. In light of the discussion in Part II, however, Chulay's action was not totally unrelated or antagonistic to the best interests of the municipality. On the contrary, patronage was essential to the proper functioning of the Public Works Department and is therefore not an improper factor upon which to rely in this case. Notwithstanding that Chulay may have fallen short when presenting his reasons for terminating Diamond to the Village Trustees, Chulay's motive for discharging Diamond—political it may have been—was not malicious or entirely self-motivated. The evidence does not indicate that Chulay was vindictively out to get Diamond or that he misused his office. Furthermore, as the Illinois Supreme Court noted in *Fellhauer*, this situation "does not present an instance of 'outsiders intermeddling maliciously in the contracts or affairs of other parties.'" *Fellhauer*, 154 Ill.Dec. at 658, 568 N.E.2d at 879 (citing *Loewenthal Securities Co. v. White Paving Co.*, 351 Ill. 285, 300, 184 N.E. 310 (1932)). "It instead involves the discharge of an appointed public official by the officer authorized ... to both initiate and terminate employment for that position." *Id.*

In sum, summary judgment is appropriate in favor of Chulay and against Diamond on Count V because Chulay's action was not unjustified.

## V. *Federal Labor Standards Act Overtime Requirements (Count VI):*

Finally, the court finds that summary judgment in favor of defendants is appropriate on Count VI.

Diamond seeks payment for (1) overtime wages while serving as Superintendent and Acting Director of Public Works, (2) a retroactive clothing allowance for the 1988–89 year in the amount of $450, (3) unused accumulated sick days, and (4) unused vacation pay. Except for the claim under the Federal Labor Standards Act, 29 U.S.C. § 201 *et seq.*, Diamond advances no theory of liability. Defendants, on the other hand, assert that Diamond occupied a position which was exempt from federal overtime requirements; that Lincolnwood did not have a policy of purchasing unused sick

days from management employees upon their leaving its employment; and that no compensation is due for Diamond's unused vacation days because Lincolnwood's policy required employees to use their vacation days in the year in which they were earned without accumulation.

■■■ Diamond does not counter the defendants' argument that Diamond occupied an exempt position from the overtime requirements. Employees working in an executive or administrative capacity are exempt from the Fair Labor Standards Act's overtime provisions. 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.1, 541.2. To establish an exemption, the employer must prove (1) that the employee is compensated on a salary basis of not less than $250 per week, (2) that the employee is primarily responsible for management duties, and (3) that the employee customarily and regularly directed the work of two or more other employees. 29 C.F.R. § 541.1; *York v. City of Wichita Falls*, 944 F.2d 236, 242 (5th Cir. 1991). Defendants have established the exemption. Defendants have sufficiently established that Lincolnwood compensated Diamond on a salary basis amounting to more than $250 per week. Diamond admits his salary ranged from $34,500 to $41,800 a year, making his weekly income between $660 to $800. The duties of Superintendent of Public Works and Director of Public Works encompass primarily management functions, collectively including the establishment of policy and long-term goals, the implementation of policy, the preparation of the budget, promotion and termination of department personnel, as well as managing resources and personnel. Last, the Superintendent of Public Works and the Director of Public Works both oversee approximately thirty-five to forty-five employees.

■■■ On the other claims, both sides have demonstrated that there are factual issues regarding Lincolnwood's responsibilities and policies in regard to the clothing allowance, unused sick days, and unused vacation time. Nevertheless, neither side has supported their position with any authority. Diamond's briefs do not even identify the theory of liability with which he is pursuing these claims beyond that it was Lincolnwood's "policy or practice" to grant these benefits. Is he claiming these additional benefits under the Fair Labor Standards Act, local statute or ordinance, or some theory of contract law? Diamond does not provide the court with an argument to establish the enforceability in law of a "policy or practice" under these circumstances. A "skeletal argument," unsupported by relevant authority or reasoning, is merely an assertion which does not sufficiently raise the issue to merit the court's consideration. *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with *pertinent* authority or by showing why it is a good point despite a lack of authority ... forfeits the point. We will not do his research for him") (emphasis in original; citations omitted); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs"); *see also Hanrahan v. Thieret*, 933 F.2d 1328, 1335 n. 13 (7th Cir.) (quoting *Dunkel*), *cert. denied*, — U.S. ——, 112 S.Ct. 446, 116 L.Ed.2d 464 (1991). The court accordingly deems the remaining issues abandoned and concludes that Diamond has no remaining claims in Count IV.

## CONCLUSION

For all of the reasons stated above, the defendants' motion for summary judgment is granted in its entirety. Diamond's motion for summary judgment is denied.

IT IS SO ORDERED.